1

**GREBEN & ASSOCIATES**

2

1332 ANACAPA STREET, SUITE 110
SANTA BARBARA, CA 93101
TELEPHONE: (805) 963-9090
FACSIMILE: (805) 963-9098

3

4

Jan A. Greben, SBN 103464
jan@grebenlaw.com

5

Jeff G. Coyner, SBN 233499
jeff@grebenlaw.com

6

Daniele De Smeth, SBN 263309
danielle@grebenlaw.com

7

8

Attorneys for Defendants THE ESTATE OF DONALD T. HEIM
and MAXINE HEIM

9

10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11

12

MARK HEIM

Plaintiff,

**Case No. 5:10-CV-03816 EJD**

13

14

vs.

15

THE ESTATE OF DONALD T. HEIM,
MAXINE HEIM, AND CITY OF
WATSONVILLE,

**STIPULATION AND [~~PROPOSED~~]
ORDER ALLOWING AMENDMENT
OF CLAIMS**

16

Defendants.

17

18

And Related Counter-Claims and Third-Party
Claims.

19

20

IT IS HEREBY STIPULATED by and between the existing parties to this case, Plaintiff

21

Mark Heim, Defendant Maxine Heim, Defendant City of Watsonville, and Defendants

22

Multimatic Corporation, Multimatic LLC and the Kirrberg Corporation that Mark Heim, Maxine

23

Heim, and the City of Watsonville may file amended pleadings in this case.  The amended

24

pleadings are attached as follows:

25

--      The First Amended Complaint of Mark Heim is attached hereto as Exhibit A;

26

--      The Second Amended Third Party Complaint of Maxine Heim is attached hereto as

27

Exhibit B;

28

--      The Third Party Complaint of the City of Watsonville is attached hereto as Exhibit C.

1

1        The City of Watsonville continues to maintain its previously pled allegations against

2   Mark Heim and Maxine Heim and the Estate of Donald T. Heim.

3

4   Dated: June 27, 2011                          LAW OFFICES OF MARTIN DEUTSCH

5
                                                 _/s/ Martin Deutsch_____
6                                                MARTIN DEUTSCH
                                                 SOSAN AKBAR
7                                                Attorneys for Plaintiff and Counter Defendant
                                                 MARK HEIM
8

9   Dated: June 27, 2011                          GREBEN & ASSOCIATES

10
                                                 _/s/ Jan Greben_____
11                                               JAN A. GREBEN
                                                 JEFF COYNER
12                                               DANIELLE DE SMETH
                                                 Attorneys for Defendant THE ESTATE and
13                                               Defendant, Counter Complainant, Cross
                                                 Complainant and Third Party Plaintiff Maxine Heim
14

15   Dated: June 27, 2011                          WACTOR & WICK LLP

16
                                                 _/s/ William Wick_____
17                                               WILLIAM D. WICK
                                                 Attorneys for Defendant, Counter-Complainant,
18                                               and Cross-Complainant
                                                 THE CITY OF WATSONVILLE
19

20   Dated: June 27, 2011                          DONGELL LAWRENCE FINNEY

21
                                                 _/s/ Thomas Vandenburg_____
22                                               THOMAS VANDENBURG
                                                 IAN CULVER
23                                               Attorneys for Third Party Defendants
                                                 MULTIMATIC CORPORATION, MULTIMATIC
24                                               LLC and THE KIRRBERG CORPORATION

25   **IT IS HEREBY ORDERED.**
     On or before **July 1, 2011** the respective parties shall file their amended pleadings as separate
26   docket entries.

27   Dated:   June 29, 2011                        _____
                                                 The Hon. Edward J. Davila
28                                               United States District Court Judge

# EXHIBIT "A"

MARTIN DEUTSCH (SBN 111409)
SOSAN AKBAR (SBN 212424)
LAW OFFICES OF MARTIN DEUTSCH
440 N. FIRST STREET
SAN JOSE, CA 95112
(408) 947-1760

**Attorneys for MARK HEIM**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HEIM | Case No.: 5:10-CV-03816 EJD |
| Plaintiff, | |
| vs. | |
| THE ESTATE OF DONALD T. HEIM, MAXINE HEIM, PROJECT ONE  a California Limited Partnership; WILLIAM BURGSTROM; ESTATE OF ERNIE WEBB; CITY OF WATSONVILLE, MULTIMATIC DRY CLEANING MACHINE CORPORATION, MULTIMATIC CORPORATION, as successor in interest to Multimatic Dry Cleaning Machine Corporation; MULTIMATIC LLC, a New Jersey limited liability company, as successor in interest to Multimatic Corporation and Multimatic Dry Cleaning Machine Corporation, AND THE KIRRBERG CORPORATION, a New Jersey Corporation, formerly known as Multimatic Corporation and AMERICAN LAUNDRY MACHINERY Inc and DOES 1 THROUGH 20; | **PLAINTIFF MARK HEIM'S FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL** |
| Defendants. | |
| _____ | |
| AND RELATED COUNTER AND CROSS CLAIMS | |

////

///

MARK HEIM (herein after referred to as "Plaintiff") hereby alleges as follows:

### JURISDICTION, VENUE AND INTRA DISTRICT ASSIGNMENT

1.      Plaintiff's claims against defendants THE ESTATE OF DONALD T. HEIM, MAXINE HEIM, and CITY OF WATSONVILLE (herein after collectively referred to as "Defendants") arise out of the environmental contamination at and around the real property located at 1350 Freedom Boulevard, Watsonville, California ("Property").

2.      This action primarily arises under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.  This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 2202, 42 U.S.C. §§ 9607, 9613 and Federal Rule of Civil Procedure Rule 57.

3.      Venue is proper under the provisions of 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 9613, because the claims stated herein arose in this district in Santa Cruz County.

### JURISDICTION AND VENUE

4.      This action primarily arises under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq..  This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 2201 et seq.,  42 U.S.C. §§ 9607, 9613 and Federal Rule of Civil Procedure 57.  This Court has supplemental jurisdiction over the state claims asserted in this action pursuant to 28 U.S.C. § 1367. The federal and state claims alleged herein are based on the same set of operative facts.  Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state claims.

5.      Venue is proper under the provisions of 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 9613, 6972(a) because the claims stated herein arose in this district in Santa Cruz County.

THE PARTIES

6.      Plaintiff Mark Heim is an individual doing business in the State of California, County of Santa Cruz, and owns the real property at issue in this action.

7.      Defendant Maxine Heim ("Ms. Heim") is an individual and resident of the State of Arizona.

8.      Defendant Project One Limited Partnership ("Project One") is a California Limited Partnership who at all relevant times was doing business in California..

9.      Defendant William Burgstrom is an individual doing business in the State of California and a general partner for Project One

10.     Defendant the Estate of Ernie Webb is the estate of Ernie Webb general partner for Project One.

11.     Defendant City of Watsonville is a Charter City, in the County of Santa Cruz, State of California.

12.     Defendant Multimatic Dry Cleaning Corporation is a New Jersey corporation, who at all relevant times was a corporation doing business in California.

13.     Defendant Multimatic Corporation is a New Jersey corporation, who at all relevant times was a corporation doing business in California.

14.     Defendant Multimatic LLC is a New Jersey limited liability company, who at all relevant times was a corporation doing business in California.

15.     Defendant the Kirrberg Corporation is a New Jersey corporation, who at all relevant times was a corporation doing business in California.

16.     Multimatic Dry Cleaning Corporation, Multimatic Corporation, Multimatic LLC and Kirrberg Corporation will be referred to in this pleading as the "Multimatic entities."

17.     Defendant American Laundry Machinery, Inc. ("ALMI"), also known under the brand name Ajax was, at all relevant times a corporation doing business in California, County of Santa Cruz.

18.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants identified herein as DOES 1-20, inclusive, are unknown to Plaintiff, who therefore sue said Third-Party Defendants by such fictitious names.  Plaintiff alleges that each of the Defendants designated herein is legally responsible in some manner–either by way of their ownership or operation/control of the Property–for the events and happenings herein referred to and proximately caused injury and damages to Plaintiff as herein alleged.  Each such ROE Defendant

was the agent, employee of, or acting under the direction of all other Defendants and in doing the things alleged was acting within the scope and purpose of said agency and/or employment.

**<u>GENERAL ALLEGATIONS</u>**

19.     Plaintiff, at all times relevant to these claims has owned the property located at 1350 Freedom Boulevard, Watsonville, California ("the Property").  Plaintiff has owned the Property continuously since June 1996.

20.     Plaintiff is informed and believes that William Burgstrom and Ernie Webb are general partners for the Project One, Limited Partnership and are therefore jointly and severally liable for liabilities of the partnership.

21.     Project One Parties, as owner of the Property, executed a lease in or about February of 1970 with Ms. Heim and her late husband Donald Heim ("Mr. Heim").  Project One Parties agreed as consideration for the lease "to construct at its sole cost the necessary building for a dry cleaning establishment."  Thereafter, Project One Parties would file a notice of completion after the construction was completed which would commence the term of the lease.  After completion of the construction of the dry cleaners, Project One Parties filed a notice of completion in or about May of 1970.

22.     Ms. Heim and Mr. Heim operated a dry cleaning business at the Property from approximately May of 1970 to January of 1994.  Ms. Heim and Mr. Heim purchased the Property from the Project One Parties in 1972 and owned it until June of 1996.  In June of 1996 Ms. Heim and Mr. Heim sold the Property to Plaintiff.

23.     Plaintiff is informed and believes, and on that basis alleges, that as the developers of the dry cleaning establishment and owners of the property, Project One Parties were responsible for the condition of the property and constructed the sewer laterals and floor drains servicing the dry cleaners prior to commencement of the lease with knowledge and intent that hazardous substances used in dry cleaning, including the dry cleaning solvent tetrachloroethylene ("PCE"), would be placed into the sewers.  Plaintiff is informed and believes, and on that basis alleges, that the defects in the floor drains, drain pipes and sewer laterals and connections thereto caused hazardous substances, including PCE, to escape into the environment.

24.     The Regional Water Quality Control Board has named Plaintiff as a responsible party for environmental cleanup at the Property.

25.     Plaintiff is informed and believes, and thereon alleges, that the City of Watsonville ("City") has, at all times relevant to this complaint, owned, operated, maintained, supervised and/or controlled the City's sewer system connecting to, and servicing the Property.  The operation of the sewer system by the City led to the releases of hazardous substances, including PCE, from the City's sewer system near and adjacent to the Property.

26.     Closed circuit television investigation of the City's sewer main and laterals, located near the Property, revealed breaks, cracks, defective joints and sags.  Through these defects in the City's sewer pipes, hazardous substances, including PCE, have escaped and will continue to escape into the environment.  The acts and/or omissions by the City, including its failure to maintain and operate its sewers in a safe manner to prevent the exfiltration of hazardous substances, including PCE, from its sewer pipes, resulted in contamination in groundwater near the Property. The City was, at all relevant times, in sufficient control of the sewers to have known of the release of hazardous substances and to have prevented the resulting contamination. The City knew or should have known that its operation of the City's sewer system would have, and did, cause the contamination described herein.

27.     The Multimatic Entities and ALMI designed, manufactured, formulated, packaged, distributed, sold and/or installed products–dry cleaning machines and related filtration, distillation, and solvent recovery equipment–containing chlorinated solvents and/or dry cleaning equipment specifically designed to store, use, process, and dispose of chlorinated solvents. Said defendants represented, asserted, claimed and warranted that their products were safe and could be operated without causing injury or damage. Defendants knew, or should have known, that their products– when operated as intended caused contamination of the environment.

28.     Plaintiff is informed and believes and therefore alleges that each of the Multimatic entities is individually liable and/or jointly and severally liable as a successor in interest. Plaintiff is informed and believes the Multimatic Entities took affirmative steps to dispose of PCE through their design, manufacture, formulation, packaging, distribution, sale and/or installation of dry cleaning

equipment used by Plaintiffs and/or Third Party Plaintiffs on the Property.  Multimatic Entities designed equipment used at the site, namely the Multimatic M22 Dry-to-Dry Machine, Serial # 0476986, 50 lb capacity and Multimatic Model M22 Still, Serial # 1165.  This equipment was, based on information and belief, used at the Property from approximately 1976 through 1998.  The method of disposal mandated by design and instruction of this equipment resulted in environmental contamination at and near the Property because wastewater containing PCE produced by the machine was directed to the drain.  The Multimatic Entities warranted that their products were safe and could be operated without causing injury or damage.  The Multimatic Entities planned for their products, when operated as intended, to cause contamination of the environment.

The Multimatic Entities caused contamination at and near the Property.  The Multimatic dry cleaning machine created wastewater containing PCE by its regular use.  Through its design and instruction, the Multimatic Entities intended and mandated this wastewater be disposed of down the drain, sink and/or sewer.  The creation and disposal of wastewater was a necessary and inherent step in the function of Multimatic's machine.

(1)     Design, Testing, and Manufacture

During the manufacturing process, Multimatic's testing involved running dry cleaning cycles with real clothes to learn how a dry cleaner would operate the Multimatic machine. The Multimatic Entities' employees used PCE in this process and company representatives, including Ronald Velli, were aware that separator water could pose an environmental danger if disposed of down the drain because it contained unsafe levels of PCE.  The Multimatic Entities knew at least as early as 1970 that PCE was a hazardous substance.

(2)     Design and Manufacture Defects Cause PCE Spills

The Multimatic Entities also knew that use of its dry cleaning machines, as designed, resulted in environmental contamination but nevertheless persisted in producing machines of faulty design and poor manufacture quality. The Multimatic Entities employees, executives, and representatives witnessed spills and releases of PCE at the Multimatic Entities' plant and testing site in New Jersey.  These incidents were caused by flaws in the Multimatic Entities' equipment, including the poor quality of the hoses used to transport PCE and wastewater containing PCE, the

quality of the connections on the machinery including hose connection to the equipment, shrinkage of hoses and leaking gaskets connecting the still to the dry cleaning machine, resulting in the release of PCE and PCE vapors.

Several spills occurred at the Multimatic Entities' plant during the manufacturing process during the late 1970s and early 1980s. Despite the known potential for spills and releases of PCE, the Multimatic Entities failed to fix the design and manufacturing flaws that caused them. The Multimatic Entities' failure to fix these hazardous-spill causing inadequacies constitutes an affirmation of such disposals, i.e., the Multimatic Entities intended PCE disposal to occur and contributed to contamination at the Property, where such spills did occur.

Even though they were aware of PCE-spills caused by regular operation of their equipment, the Multimatic Entities failed to adequately warn its customers regarding the dangers inherent in operating its machinery and the potential for environmental contamination. In fact, the Multimatic Entities did the opposite and instructed dry cleaners to dispose of wastewater containing PCE down the drain.

Defects in the M22 used at the Property resulted in several spills annually at the Property. For example, one spill in 1983, on information and belief, caused 20 gallons of PCE to spill out of the M22. This spill was caused by a the failure of a clamp and seal on the machine. These and other mechanical failures were the most frequent causes of spills and leaks from the M22 at the Property. The Multimatic Entities' equipment at the site at issue in this litigation had multiple spills and releases of PCE.

(3)    Resulting Property Damage

The Multimatic Entities' acts outlined above caused physical injury to both the Property and surrounding properties. After PCE was deposited down the drain, it flowed into the sewer, where it escaped into soil and groundwater at and surrounding the Property. As a result, soil at the Property is contaminated and its use is impaired. Digging in it poses a threat to the health of the public, the private owner, and anyone else occupying or visiting the Property. Soil contamination has created toxic soil vapors that pose a danger to public health and can easily escape into the air when soil is moved or displaced.

The Multimatic Entities' faulty equipment design further caused PCE spills and leaks at the Property. During a spill or leak, PCE flowed out of the dry cleaning business and came into contact with soil on the Property, where it was absorbed and contributed to soil and groundwater contamination at and near the Property. Additionally, the cleanup of these spills and leaks required disposal of PCE down the drain, which proximately caused environmental contamination as described in the preceding paragraph.

Use of the equipment caused leaks and spills resulting in PCE contamination of soil and groundwater via direct contact. These disposals continued through the last operation of the Multimatic machine at the Property. Even after the machine was removed from the Property, the contaminated wastewater it produced continued to pollute soil and groundwater at and near the Property due to the slow release of PCE accumulated in the City's sewers.

29. Plaintiff is informed and believes, and thereon alleges, that on or about 1991, Multimatic Dry Cleaning Machine Corporation was reorganized and continued to operate as Multimatic Corporation.

30. Plaintiff is informed and believes, and thereon alleges, that on or about October 31 2003, Multimatic Corporation sold substantial assets to Multimatic LLC in an asset purchase agreement. Multimatic LLC continued Multimatic Corporation's business and is its successor-in- interest.

31. Plaintiff is informed and believes, and thereon alleges, that on or about October 31 2003, Multimatic Corporation changed its name to The Kirrberg Corporation.

32. Plaintiff is informed and believes, and thereon alleges that Multimatic Corporation, Multimatic LLC, and The Kirrberg Corporation are liable individually, and as the parent corporations, purchasing corporations, alter egos, agents, assignees, surviving entities and/or successors-in-interest of each other.

33. As a direct and proximate result of the Multimatic Entities' conduct, the condition of the Property, including but not limited to the sewer, storm drain, and water facilities was such that it resulted in the release of hazardous substances onto the Property, and surrounding properties, soil, and groundwater.

34.     Plaintiff is informed and believes that ALMI took affirmative steps to dispose of PCE through its design, manufacture, formulation, packaging, distribution, sale and/or installation of dry cleaning equipment used by Plaintiffs and/or Third Party Plaintiff on the Property.  ALMI designed, manufactured and sold equipment used at the Property, namely the Ajax Model 218 Vapor Adsorption Unit, Serial # 21821760784 ("Ajax machine").  ALMI Controller, Stephen Crank has signed an affidavit stating that this Ajax machine was sold by ALMI in 1984.   The Ajax machine was, based on information and belief, used at the Property from approximately 1980 through 1994. The method of disposal mandated by design and instruction in the manual for this equipment resulted in environmental contamination at and near the Property because wastewater containing PCE produced by the machine was directed to a drain or trough.  ALMI warranted that its products were safe and could be operated without causing injury or damage.  ALMI planned for its product, when operated as intended, to cause contamination of the environment.

ALMI caused contamination at and near the Property.  The Ajax machine created wastewater containing PCE by its regular use.  Through its design and instruction, ALMI intended and mandated this wastewater be disposed of down the drain, sink and/or sewer.  The creation and disposal of wastewater was a necessary and inherent step in the function of the Ajax machine.

(1)     Dry Cleaning Industry

At all times relevant to this pleadings, ALMI belonged to dry cleaning trade associations, such as the International Fabricare Institute ("IFI").  Membership in these organizations provided dry cleaning equipment manufacturers, including ALMI, with up-to-date information regarding the hazards of PCE and wastewater disposal down the sewer.

(2)     Ajax Vapor Adsorber Operator's Manual

Section 2.10 Water Separator Connections of the ALMI Machine manual directs:

Connect the water overflow outlet (6, Figure 1-2) to a suitable waste water drain or trough. If connected to a rigid drain the connecting line can be flexible.  Using copper tubing or other pipe suitable for "perc" service, connect the "perc" overflow (7) to the storage tank of the cleaning unit.

The Heims followed this instruction at the dry cleaning store at the Property: the wastewater from the ALMI machine was plumbed to the drain.  Essentially, air from the dry cleaning machine

was directed into the ALMI machine, the carbon in the ALMI machine collected the PCE.  Once a week, a steam would be run through the ALMI machine to "strip" the PCE from the Carbon.  This created separator water containing PCE.  The ALMI machine yielded approximately 10 gallons of contaminated wastewater per week.  For many years, the Heims had no place to dispose of this waste except down the drain and were following ALMI's direction in doing so.

(3)     Design and Manufacture Defects Cause PCE Spills

The ALMI machine, even when operated properly, had several defects causing spills and leaks at the Property.  Flaws in the ALMI machine included the poor quality of the hoses and seals used to transport PCE and wastewater containing PCE, the quality of the connections on the machinery, including hose connection to the equipment, shrinkage of hoses and leaking gaskets resulting in the release of PCE and PCE vapors.

Several times the machine required repair because it was leaking PCE.  Leaks came from water separator and gaskets- PCE fell on concrete and was not believed to be caused by the operator's malfunction.  Up to 2 gallons of PCE resulted from each spill onto the concrete.  At least one leak was due to the clear hose on the condenser pulling off because it had shrunk due to exposure to PCE, water and heat.  Ajax had actual hoses that would get hard and shrink and pull away from their fittings.

ALMI failed to adequately warn its customers regarding the dangers inherent in operating its machinery and the potential for environmental contamination.  In fact, ALMI did the opposite and instructed dry cleaners to dispose of wastewater containing PCE down the drain.

(4)     Resulting Property Damage

ALMI's acts outlined above caused physical injury to both the Property and surrounding properties.  After wastewater containing PCE was deposited down the drain, it flowed into the sewer, where it escaped into soil and groundwater at and surrounding the Property.  As a result, soil at the Property is contaminated and its use is impaired.  Digging in it poses a threat to the health of the public, the private owner, and anyone else occupying the Property.  Soil contamination has created toxic soil vapors that pose a danger to public health and can easily escape into the air when soil is moved or displaced.

FIRST AMENDED COMPLAINT

1    ALMI's faulty equipment design further caused PCE spills and leaks at the Property.  During

2    a spill or leak, PCE flowed out of the dry cleaning business and came into contact with soil on the

3    Property, where it was absorbed and contributed to soil and groundwater contamination at and near

4    the Property.  Additionally, the cleanup of these spills and leaks required disposal of PCE down the

5    drain, which proximately caused environmental contamination as described in the preceding

6    paragraph.

7    Use of the equipment caused leaks and spills resulting in PCE contamination of soil and

8    groundwater via direct contact.  These disposals continued through the last operation of the ALMI

9    machine at the Property.  Even after the machine was removed from the Property, the contaminated

10    wastewater it produced continued to pollute soil and groundwater at and near the Property due to the

11    slow release of PCE accumulated in the City's sewers.

12    35.    As a direct and proximate result of ALMI's conduct, the condition of the Property,

13    including but not limited to the sewer, storm drain, and water facilities was such that it resulted in

14    the release of hazardous substances onto the Property, and surrounding properties, soil, and

15    groundwater.

16    **FIRST CLAIM FOR RELIEF**

17    (Contribution Pursuant to CERCLA § 113(f))

18    (All Defendants)

19    36.  Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs

20    1 through 35 as though fully set forth herein.

21    37.    The Property is a "facility" within the meaning of section 101(9) of CERCLA, 42

22    U.S.C. § 9601(9). The contaminants located in the soil and ground water at, on, or under the

23    Property, including but not limited to PCE, are "hazardous substances" within the meaning of 42

24    U.S.C. § 9601(14).

25    38.    The City's sewer system connecting to and servicing the Property is a "facility"

26    within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).  The contaminants located

27    in the soil and groundwater near the Property, including but not limited to PCE, are "hazardous

28    substances" within the meaning of 42 U.S.C. § 9601(14).

39.     Plaintiff, City, Multimatic entities, ALMI and Project One parties are a liable person within the meaning of section 1(a) of CERCLA, 42 U.S.C. § 9607( A ) .

40.     The cross-complaint by City and Ms. Heim constitutes a civil action within the meaning of section 113(f) of CERCLA, 42 U.S.C. section 9613(f)(1).

41.     Plaintiff has incurred response costs, including but not limited to costs to investigate, assess, the evaluate, monitor and/or respond to the releases and threatened releases of hazardous substances at the property as defined in sections 101(23), (24), and (25).  Plaintiff will incur such costs in the future.

42.     Plaintiff incurred its response costs in a manner not inconsistent with the national contingency plan.

43.      Plaintiff is entitled to 100% contribution from defendants or contribution and such other percentage as of this court deems appropriate, pursuant to CERCLA sections 113(f)(1).

**SECOND CLAIM FOR RELIEF**

(Cost Recovery Pursuant to CERCLA § 107(a))

(All Defendants)

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 43 as though fully set forth herein.

45.     The Property is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9). The contaminants located in the soil and ground water at, on, or under the Property, including but not limited to PCE, are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

46.     The City's sewer system connecting to and servicing the Property is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).  The contaminants located in the soil and groundwater near the Property, including but not limited to PCE, are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

47.     Multimatic Entities are a liable or potentially liable person within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a), who arranged for the disposal or treatment of hazardous substances, including PCE, and as described in paragraph 20 above.

48.     ALMI is a liable or potentially liable person within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a), who arranged for the disposal or treatment of hazardous substances, including PCE, and as described in paragraph 26 above.

49.     Under Section 107 of CERCLA, 42 U.S.C. § 9607, Plaintiff seeks recovery of necessary costs of responses and payment from Multimatic Entities and ALMI, and each of them, for Plaintiff's outlays of all past, present, and future necessary response costs incurred in response to the release of hazardous substances at or affecting the Property or surrounding properties.  The release and disposal of the hazardous substances is continuing in nature.

50.     The City is the past and current owner and operator of the sewer system at and connecting to the Property. The City is the past and current arranger of the past and continued disposal and release of hazardous substances into the soil, groundwater and environment at and surrounding the Property. This City is liable for the contamination pursuant to 42 U.S.C. § 9607(a).

51.     The Project One Parties are the past owners and operators of the sewer system at and connecting to the Property.  The Project One Parties are the past and current arrangers of the past and continued disposal and release of hazardous substances into the soil, groundwater and environment at and surrounding the Property. The Project One Parties are liable for the contamination pursuant to 42 U.S.C. § 9607(a).

52.     Plaintiff has incurred, and will continue to incur, necessary response costs, including costs of investigation, removal and/or remedial actions in the investigation, clean up and abatement of the releases and threatened releases of hazardous substances from Ms. Heim, the Project One Parties's and City's ownership, operations and activities at and/or near the Property.   All of the necessary response costs incurred and to be incurred by Plaintiff are a result of the contamination of the Property and surrounding properties, caused by Defendants.

53.     All costs incurred, and to be incurred, by Plaintiff are necessary costs of response consistent with the provisions of CERCLA and the National Contingency Plan.

54.     Plaintiff continues to incur response costs and other costs in connection with the investigation and remediation of the Property.  There has been no completion of a removal action.

55.     Multimatic Entities and ALMI, and each of them, are jointly and severally liable to claimant pursuant to 42 U.S.C. § 9607 for all of the past, present and future necessary costs of response including without limitations, investigation and remediation expenses, attorneys' fees, oversight costs and interest, in an amount to be determined at trial.

56.     Pursuant to 42 U.S.C. § 9613(g)(2), Plaintiff is entitled to a declaratory judgment that Multimatic Entities and ALMI, and each of them, are liable in any subsequent action by plaintiff to recover further responses costs or damages incurred as a result of hazardous substances at and around the Property.

### THIRD CLAIM FOR RELIEF

(Hazardous Substance Statutory Indemnity)

(All Defendants)

57.     Plaintiff re-alleges and incorporate by reference the allegations contained in Paragraphs 1 through 56 as though fully set forth herein.

58.     The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code Sections 25300, 25395 (hereinafter the "HSAA") was enacted to encourage expedient clean-up of contaminated properties.  To provide such encouragement, the legislature included the statutory right of indemnification for those parties who incur response costs and those parties who are responsible for the contamination.  The responsible parties include owners and operators of the facilities at the time the alleged hazardous substance is allegedly discharged into the environment for such facility, as well as those who arrange for treatment or disposal of hazardous waste.  As alleged in the general allegations above, counter and Defendants are owners or operators of qualifying facilities or arrangers of hazardous waste disposal or treatment.

59.     Plaintiff has and will continue to incur costs arising from the hazardous substance contamination of the soil and groundwater in and around the Property.

60.     Plaintiff is a liable person under the HSAA due to his status as either owners or operators of the Property or the sewers.  Additionally, Defendants arranged for the disposal and discharge of hazardous substances on account of said Defendants' actual and direct control of the method of disposal of PCE on and near the Property, as well as planning for disposal of PCE

1   through design and instructions of their machines.  Such liability has not previously been discharged

2   pursuant to any state apportionment proceeding.  Plaintiff is entitled to indemnification and

3   contribution from Defendants, in whole or in part, based upon California Health & Safety Code

4   Section 25363(e).

### FOURTH CLAIM FOR RELIEF

(Negligence)

(ALMI and Multimatic entities only)

8   61.   Plaintiff re-alleges and incorporates by reference the allegations contained in

9   Paragraphs 1 through 60 as though fully set forth herein.

10   62.   Plaintiff  is informed and believes, and thereon alleges, that during Ms. Heim's and

11   Plaintiffs' ownership and/or operation of a dry cleaner on the Property, sudden and accidental

12   releases of PCE have occurred, resulting in contamination at the Property. Some of the sudden and

13   accidental releases are attributable to Defendants' negligence in failing to: properly use solvents,

14   supervise the operation of equipment on the Property, and cleanup of spilled solvents. Defendants

15   failed to warn against such occurrences and the potential for property damage and harm to the

16   environment based on the nature of PCE.

17   63.   Defendants breached their duty by negligently causing, permitting and/or contributing

18   to contamination at the Property, and other land and water near the Property.

19   64.   As a proximate result of Defendants' negligence, Plaintiff has suffered damages

20   including, but not limited to response costs incurred and to be incurred in the future to properly

21   respond to the alleged hazardous substance contamination in and around the Property, and related

22   costs.  Such costs also include attorneys' fees and consultants' fees incurred as a direct and

23   proximate result of said negligence.

24   ///

25   ///

26   ///

27   ///

28   ///

1

**FIFTH CLAIM FOR RELIEF**

2

(Negligence Per Se)

3

(ALMI and Multimatic entities only)

4      65.      Plaintiff re-alleges and incorporates by reference the allegations contained in

5    Paragraphs 1 through 64 as though fully set forth herein.

6      66.      The foregoing acts and/or omissions violate California Civil Code Sections 3281-

7    3282, 3497; California Health & Safety Code Sections 5411, et seq.; California Water Code Sections

8    13000, et seq.; and Fish & Game Code Sections 5650, et seq., which provide a standard of care and

9    duty of care by which Defendants are held.  Defendants' conduct has breached said duties of care

10   thereby constituting negligence per se.

11

**SIXTH CLAIM FOR RELIEF**

12

(Common Law Contribution)

13

(All defendants)

14      67.      Plaintiff re-alleges and incorporates by reference the allegations contained in

15   Paragraphs 1 through 66 as though fully set forth herein.

16      68.      In the event liability should be established on the part of Plaintiff, which liability is

17   expressly denied, Plaintiff is informed and believes, and thereon alleges, that it may be obligated to

18   pay sums representing a percentage of liability not Plaintiff's own, but rather that of Defendants.

19   Therefore, Plaintiff requests an adjudication and determination with respect to degrees of liability, if

20   any, on its part and on the part of Defendants so as to determine that portion of the amount, if any,

21   by which Plaintiff is found liable, which actually represents a portion of liability of all of the

22   Counter and Defendants.

23

**SEVENTH CLAIM FOR RELIEF**

24

(Porter-Cologne Statutory Contribution)

25

(All defendants)

26      69.      Plaintiff re-alleges and incorporates by reference the allegations contained in

27   Paragraphs 1 through 68 as though fully set forth herein

28

70.     The Porter-Cologne Act provides for statutory contribution to those persons who become liable for the investigation, clean-up and remediation of hazardous substance contamination to groundwater.  To the extent Plaintiff incurs costs and expenses in response to the alleged hazardous substance contamination of the soil and groundwater in and around the Property, Plaintiff is statutorily entitled to contribution pursuant to Water Code Section 13350(j) and hereby requests contribution and indemnification pursuant to that section as against the Defendants, and each of them jointly and severally.

### EIGHTH CLAIM FOR RELIEF

(PRIVATE NUISANCE)

(All defendants)

71.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 70 as though fully set forth herein

72.     Defendants caused or permitted the contamination alleged in this action by their negligence, intentional or otherwise, actionable acts and/or omissions.

73.     The contamination constitutes a nuisance within the meaning of Section 3479 of California Civil Code.

74.     Plaintiff is informed and believes, and on that basis alleges, that the contamination is continuing and abatable. Defendants have interfered with Plaintiffs' right to quiet enjoyment of the Property.

75.     As a proximate result of the nuisance, Plaintiff has been and will be damaged by incurring costs to respond to the alleged hazardous substance contamination in and around the Property in an amount to be established at trial. Plaintiff has been and will be damaged by loss of use and constructive eviction of and from the Property.

### NINTH CAUSE OF ACTION

(Trespass)

76.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 75 as though fully set forth herein

77.     Defendants have trespassed and are trespassing on the Property by contaminating the soil and groundwater and/or by contributing to said contamination.

78.     Said contamination occurred as a result of the negligent and/or intentional conduct of the Defendants, and each of them, and/or as a result of conduct which constitutes an ultra-hazardous activity.

79.     As a direct and proximate result of said trespass, Plaintiffs has been damaged in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**

(Public Nuisance)

(All defendants)

80.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 81 as though fully set forth herein.

81.     The contamination on and about the Property constitutes a public nuisance within the meaning of California Water Code Section 13050(m), and California Civil Code Sections 3479 and 3480.

82.     Plaintiff is informed and believes, and on that basis alleges, that the contamination is continuing and abatable.

83.     As a proximate result of the nuisance, the Plaintiff has been, and will be, damaged by incurring costs to respond to the alleged hazardous substance contamination in and around the Property in an amount to be established at trial.

84.     Plaintiff has suffered, and will continue to suffer, harm that is different from the type of harm suffered by the general public as a result of the public nuisance, as alleged herein, because Plaintiff has incurred, and will continue to incur, costs and expenses to investigative and respond to the contamination.

///

///

///

///

**ELEVENTH CAUSE OF ACTION**

(Public Nuisance Per Se)

(All defendants)

85.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 84 as though fully set forth herein.

86.     Plaintiff alleges that the conduct of Defendants, and each of them, which has resulted in contamination of soil and groundwater on and about the Property, and surrounding properties, and constitutes a public nuisance, is a violation of California Water Code Sections 13050(m), 13304, 13350, and 13387, and California Health & Safety Code sections 5411, 5411.5, and 117555, the purposes of which are to set a standard of care or conduct to protect Plaintiff, and all persons and property of the general public at large, as well as the environment, from the type of conduct engaged in by Defendants, and each of them. Therefore, such improper activities and violations constitute a public nuisance per se.

87.     Defendants, and each of them, have failed to comply with the state law as detailed above.  Plaintiff has sustained special injury as a result of this public nuisance, including investigative costs, attorney's fees, and other costs, as described herein.  As a further direct and proximate cause of the public nuisance per se created by Defendants, and each of them, Plaintiff has suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial. Plaintiff seeks abatement of the public nuisance, and all other legally available costs and damages.

88.     Plaintiff further requests that the public nuisance, as described herein, be enjoined or abated.

**TWELFTH CAUSE OF ACTION**

(Equitable Indemnity)

(All defendants)

89.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 88 as though fully set forth herein.

90.     In the event liability should be established in this action or in any administrative or regulatory action based on the contamination alleged in this action, whose liability is expressly denied, Plaintiff alleges on information and belief that such liability will arise wholly or partly by reason of the conduct of the Defendants, and/or that Defendants are jointly liable for said liability. Defendants are therefore, bound and obligated to defend, indemnify and hold harmless Plaintiff from and against any and all claims, losses, damages, attorneys' fees, judgments and settlement expenses incurred, or to be incurred, in this action by Plaintiff.

91.     Plaintiff hereby alleges in the event liability should be established, defendants will be obligated to indemnify Plaintiff on a products liability theory.  Manufacture, design and warning defects associated with defendants' equipment obligates them under an equitable indemnity theory to contribute for an amount of damages equitably apportioned.

92.     Plaintiff intends this pleading to be notification to Defendants that Plaintiff hereby tenders to them the obligation to defend Plaintiff, pursuant to California Code of Civil Procedure Section 1021.6, and that as a result of Defendants conduct, Plaintiff has been required to defend an action by Plaintiffs, based on the contamination, and hereby demands defense and indemnity from Defendants.  Plaintiff is informed and believes, and thereon alleges, that Defendants refused said demands of tender of defense by Plaintiff.

93.     Plaintiff has necessarily retained legal counsel to defend her at her sole cost and expense and to prepare, file and prosecute this complaint as set forth herein.  Plaintiff has incurred, and will continue to incur, liability for attorneys' fees and defense costs and, in the prosecution of this complaint, a sum which is presently not ascertained but will be proven at trial.

## THIRTEENTHCAUSE OF ACTION

### (Declaratory Relief)

### (All defendants)

94.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 93 as though fully set forth herein.

95.     A determination of the proportionate degree of liability, if any, of Plaintiff, on the one hand, and Defendants, on the other, is necessary to protect the rights of Plaintiff.

96.     An actual controversy has arisen and now exists relating to the legal rights and duties of Plaintiff and Defendants, and each of them, for which Plaintiff desires a declaration of their rights and indemnification, in which Plaintiff contends, and Plaintiff is informed and believes that Defendants deny, the following:

A.     That as between these parties, the responsibility, if any, for the damages claimed by Plaintiff rests entirely on Counter and Defendants;

B.     That as a result, Defendants are obligated to partially indemnify or fully indemnify Plaintiff for sums that Plaintiff may be held to pay as a result of any damages, judgments, settlement or other awards recovered against Plaintiff by the federal or state government or private party as a result of the toxic chemical contamination of the Property, properties near and adjacent properties including, but not limited to, surface and subsurface soil and water; and

C.     Plaintiff is informed and believes that Defendants deny any such liability.

97.     Plaintiff is entitled to, and hereby requests, a judicial determination of Plaintiff's rights, indemnification and contribution, any declaration that Defendants and/or others, and not Plaintiff, is liable for all of the costs incurred, and to be incurred to remove, clean-up and remediate the alleged hazardous substance contamination of the soil and groundwater in and around the Property.

## FOURTEENTH CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY)

### (ALMI and Multimatic entities only)

98.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 97 as though fully set forth herein.

99.     Plaintiff is informed and believes, and thereon alleges that Multimatic Entities and ALMI designed, manufactured, formulated, packaged, distributed, sold and/or installed products–dry cleaning machines and related filtration, distillation and solvent recovery equipment–containing chlorinated solvents and/or dry cleaning equipment specifically designed to store, use, process, and dispose of chlorinated solvents.

100.     Plaintiff is informed and believes, and thereon alleges that the Defendants represented, asserted, claimed and warranted that chlorinated solvents and/or chlorinated solvent equipment could be used in conformity with accompanying instructions and labels in a manner which would not cause injury or damage.

101.     Plaintiff is informed and believes, and thereon alleges that Defendants knew, or should have known that the chlorinated solvents and/or chlorinated solvent equipment would be used without inspection for defects, and if any inspection performed, that the defects would not be discovered with the exercise of reasonable diligence.

102.     Plaintiff is informed and believes, and thereon alleges that Defendants designed, manufactured, formulated, packaged, distributed, sold, applied, disposed of, and/or installed products containing chlorinated solvents and/or chlorinated solvent equipment.  Defendants knew, or should have known, that exposure to chlorinated solvents would create risk of harms to human health and contaminate soils and groundwater.

103.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times the Defendants:

(a)     Were aware of the use of chlorinated solvents in the dry cleaning process or as cleaning solvents;

(b)     Were aware of the typical waste and disposal practices resulting from the intended use of their dry cleaning equipment.  Despite such knowledge, these defendants designed their equipment in such a manner that would result in spills, leaks, and/or discharge of chlorinated solvents during normal operations;

(c)     Improperly designed their chlorinated solvent dry cleaning equipment by failing to provide appropriate mechanisms to prevent and/or treat releases or spills of chlorinated solvents and its by-products for such equipment;

(d)     Failed to design proper mechanisms which would eliminate prevent and/or treat contamination arising from the dry cleaning process performed by the defendants' equipment, such as contamination from separator waste water, spent filter materials,  and similar hazardous waste by products;

(e)     Knew or should have known of appropriate equipment redesigns, retrofits, and/or modifications to protect against environmental contamination associated with use of such equipment, and negligently and/or consciously disregarded this knowledge and failed to redesign, modify, and/or retrofit the subject equipment.  Safer alternative designs and cleaning processes were scientifically feasible and economical.  Safer alternative methods of disposal and/or treatment of waste water were also scientifically feasible and economical;

(f)     Failed to Warn Plaintiff and all other users of their products that the recommended methods of use and disposal of their products would–in fact–cause pollution.

104.    Plaintiff is informed and believes, and thereon alleges that the above described defects in chlorinated solvents and chlorinated solvent dry cleaning machines existed when the chlorinated solvents and chlorinated solvent dry cleaning machines left the Defendants' possession. The chlorinated solvents and chlorinated solvent dry cleaning machines were used in a manner in which they were foreseeably intended to be used.

105.    As a proximate result of the defects alleged herein the Defendants caused Plaintiff's damages including, but not limited to, response costs incurred and to be incurred in the future to properly respond to the alleged PCE contamination in and around the Property, and related costs in making the property safe from contamination.  Such costs also include attorneys' fees and consultants' fees incurred as a direct and proximate result of said negligence.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays to this Court for the following relief:

1.     For recovery and contribution from Defendants, and each of them, of all response costs incurred, and to be incurred by claimant, in response to the alleged release of hazardous substances in, near, around and adjacent to the Property according to proof at trial;

2.     For damages against Defendants, jointly and severally, in an amount equal to all response costs and all other costs incurred in investigating, removing, cleaning up and remediating the alleged hazardous substance contamination in an amount according to proof at trial;

3.     For compensatory damages according to proof including;

4.     For incidental and consequential damages according to proof;

5.      For prejudgment interest at the legal rate;

6.      For attorney's fees;

7.      For consultants' fees and costs;

8.      For a declaration that Defendants are jointly and severally liable for abating the nuisance on the Property;

9.      For recoverable costs; and

10.     For such other and further relief as this Court deems just and proper.


## **DEMAND FOR JURY TRIAL**

Under Rule 38 of the Federal Rules of Civil Procedure, claimant demands a trial by jury on all issues so triable.



Dated:  June 24, 2011                    LAW OFFICES OF MARTIN DEUTSCH

                                         /s/ Martin Deutsch
                                         MARTIN DEUTSCH
                                         SOSAN AKBAR
                                         Attorneys for Plaintiff Mark Heim

# EXHIBIT "B"

**GREBEN & ASSOCIATES**
1332 ANACAPA STREET, SUITE 110
SANTA BARBARA, CA 93101
TELEPHONE: (805) 963-9090
FACSIMILE: (805) 963-9098

Jan A. Greben, SBN 103464
jan@grebenlaw.com
Jeff G. Coyner, SBN 233499
jeff@grebenlaw.com
Danielle De Smeth, SBN 263309
danielle@grebenlaw.com
Attorneys for Defendants THE ESTATE OF DONALD T. HEIM
and MAXINE HEIM

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HEIM, an individual<br><br>                            Plaintiff,<br><br>vs.<br><br>THE ESTATE OF DONALD T. HEIM, MAXINE HEIM, an individual, and CITY OF WATSONVILLE<br><br>                          Defendants.<br>_____<br><br>MAXINE HEIM,<br><br>               Third Party Plaintiff,<br><br>vs.<br><br>MULTIMATIC DRY CLEANING MACHINE CORPORATION, a New York Corporation; MULTIMATIC CORPORATION, a New Jersey Corporation, formerly known as Multimatic Dry Cleaning Machine Corporation; MULTIMATIC LLC, a New Jersey limited liability company, as successor in interest to Multimatic Corporation and Multimatic Dry Cleaning Machine Corporation, AND THE KIRRBERG CORPORATION, a New Jersey Corporation, formerly known as Multimatic Corporation;  **American Laundry Machinery, Inc.; William Burgstrom, an Individual; the Estate of Ernie Webb; and the Project One Limited Partnership**<br><br>               Third Party Defendants. | **Case No. 5:10-CV-03816 EJD**<br><br>**MAXINE HEIM'S SECOND AMENDED THIRD PARTY COMPLAINT; DEMAND FOR JURY TRIAL** |

1

**THIRD PARTY CLAIMS**

Pursuant to Rules 14 and 15(a)(1)(B) of the Federal Rules of Civil Procedure, Maxine Heim ("Third Party Plaintiff") hereby asserts her second amended claims against Multimatic Dry Cleaning Machine Corporation, Multimatic Corporation, Multimatic LLC and the Kirrberg Corporation (collectively "Multimatic entities"); **American Laundry Machinery, Inc.; William Burgstrom; the Estate of Ernie Webb; and the Project One Limited Partnership.**

**JURISDICTION AND VENUE**

1.      This action primarily arises under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.. This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 2201 et seq.,  42 U.S.C. §§ 9607, 9613 and Federal Rules of the Civil Procedure Rule 57.  This Court has supplemental jurisdiction of the state claims asserted in this action pursuant to 28 U.S.C. § 1367.  The federal and state claims alleged herein are based on the same set of operative facts.  Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state claims.

2.      Venue is proper under the provisions of 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 9613, 6972(a) because the claims stated herein arose in this district in Santa Cruz County.

**THE PARTIES**

3.      Plaintiff Mark Heim is an individual doing business in the State of California, County of Santa Cruz, and owns the real property at issue in this action, 1350 Freedom Boulevard, Watsonville, California ("the Property").

4.      Defendant and Third Party Plaintiff Maxine Heim is an individual and resident of the State of Arizona.

5.      Defendant City of Watsonville, is a Charter City, in the County of Santa Cruz, State of California.

6.      Third Party Defendant Multimatic Dry Cleaning Machine Corporation ("Multimatic") is a New York corporation, who at all relevant times was a corporation doing business in California.

1    7.    Third Party Defendant Multimatic Corporation ("Multimatic Corp.") is a New

2  Jersey corporation, who at all relevant times was a corporation doing business in California.

3    8.    Third Party Defendant Multimatic LLC is a New Jersey limited liability company,

4  who at all relevant times was a corporation doing business in California.

5    9.    Third Party Defendant the Kirrberg Corporation is a New Jersey corporation, who

6  at all relevant times was a corporation doing business in California.

7    **10.    Third Party Defendant Project One Limited Partnership ("Project One") is a**

8  **California Limited Partnership who at all relevant times was doing business in California.**

9    **11.    Third Party Defendant William Burgstrom is an individual doing business in**

10  **the State of California and a general partner for Project One**

11    **12.    Third Party Defendant the Estate of Ernie Webb is a general partner for**

12  **Project One.**

13    **13.    Third Party Defendant American Laundry Machinery, Inc. ("ALMI"), also**

14  **known under the brand name Ajax was, at all relevant times a corporation doing business**

15  **in California, County of Santa Cruz.**

16    14.    The true names and capacities, whether individual, corporate, associate or

17  otherwise, of Third-Party Defendants identified herein as ROES 1-20, inclusive, are unknown to

18  Third-Party Plaintiff, who therefore sue said Third-Party Defendants by such fictitious names.

19  Third-Party Plaintiff alleges that each of the Third-Party Defendants designated herein is legally

20  responsible in some manner–either by way of their ownership or operation/control of the

21  Property–for the events and happenings herein referred to and proximately caused injury and

22  damages to Third-Party Plaintiff as herein alleged.  Each such ROE Third-Party Defendant was

23  the agent, employee of, or acting under the direction of all other Defendants and/or Third-Party

24  Defendants and in doing the things alleged was acting within the scope and purpose of said

25  agency and/or employment.

26                    **GENERAL ALLEGATIONS**

27    15.    Maxine Heim hereby incorporates her allegations as set forth in her counter and

28  cross claims against Plaintiff and the City of Watsonville ("City").  Facts alleged herein relating to

3

1    Plaintiff and the City are restated for background purposes only.

2        16.    Plaintiff, at all times relevant to these claims has owned the property located at

3    1350 Freedom Boulevard, Watsonville, California ("the Property").  Ms. Heim is informed and

4    believes that Plaintiff has owned the Property continuously since June 1996.  Since January 1994,

5    Plaintiff has owned and operated a dry cleaning business at the Property.

6        **17.    William Burgstrom and Ernie Webb, now deceased were general partners for**

7    **the Project One, Limited Partnership and jointly and severally liable for liabilities of the**

8    **partnership.  Project One Parties, as owner of the Property, executed a lease in or about**

9    **February of 1970 with Donald and Maxine Heim.  Project One Parties agreed as**

10   **consideration for the lease "to construct at its sole cost the necessary building for a dry**

11   **cleaning establishment."  Thereafter, Project One Parties would file a notice of completion**

12   **after the construction was completed which would commence the term of the lease.**

13       **18.    After completion of the construction of the dry cleaners, Project One Parties**

14   **filed a notice of completion in or about May of 1970.**

15       **19.    As the developer of the dry cleaning establishment and owner of the Property,**

16   **the Project One Parties and at all times relevant, were responsible for the condition of the**

17   **Property.  As consideration for the lease agreement with Maxine Heim ("Ms. Heim"), the**

18   **Project One Parties agreed to construct the floor drains and sanitary sewers necessary for a**

19   **dry cleaners.  The Project One Parties improperly constructed the sewer laterals and floor**

20   **drains servicing the dry cleaners prior to commencement of the lease with the knowledge**

21   **and intent that hazardous substances used in dry cleaning, including tetrachloroethylene**

22   **("PCE"), would be placed into the sewers.  Through the defects in the sewer laterals and**

23   **drains, hazardous substances, including PCE, escaped into the environment during the**

24   **ownership of the Property by the Project One Parties.**

25       **20.    The acts or omissions by the Project One Parties, including its failure to**

26   **design, construct, maintain and operate its sewers in a safe manner to prevent the**

27   **exfiltration of hazardous substances, including PCE, from its sewer pipes, resulted in**

28   **contamination in groundwater near the Property. The Project One Parties were, at all**

1    **relevant times, in sufficient control of the sewers to have known of the release of hazardous**

2    **substances and to have prevented the resulting contamination.  The Project One Parties**

3    **knew or should have known that its construction and maintenance of the sewer laterals and**

4    **drains would have, and did, cause the contamination described herein.**

5    21.    Maxine Heim's husband, Donald Heim **(now deceased)**, operated a dry cleaning

6    business at the Property from approximately May of 1970 to January of 1994.  Maxine and

7    Donald Heim owned the Property from October of 1972 to June of 1996.  In June of 1996 Maxine

8    and Donald Heim sold the property to Plaintiff.

9    22.    The Regional Water Quality Control Board has named Maxine Heim a responsible

10   party for environmental cleanup at the Property.  As a result, Ms. Heim has incurred related

11   cleanup costs.

12   23.     Multimatic was formed in the 1960s by a man named Horst Hahn.  Multimatic

13   was incorporated in the state of New York but conducted business nation and world-wide.

14   24.    From its formation until it merged into Multimatic Corporation in 1991,

15   Multimatic designed, manufactured,  formulated, packaged, distributed, sold and installed dry

16   cleaning machines, as well as parts and products affiliated with the dry cleaning process.

17   25.    From at least as early as the 1970s, Multimatic has owned property located at 162

18   Veterans Drive, Northvale, New Jersey 07647 ("Multimatic Facility").  There, Multimatic

19   designed,  manufactured,  formulated, packaged, distributed, and sold dry cleaning machines, as

20   well as parts and products affiliated with the dry cleaning process.  In addition, Third Party

21   Plaintiff is informed and believes that, at all times relevant to this lawsuit, Multimatic conducted

22   general business from the Multimatic Facility.

23   26.    Maxine and Donald Heim purchased a Multimatic M22 Dry-to-Dry Machine,

24   Serial # 0476986, 50 lb capacity and Multimatic Model M22 Still, Serial # 1165 ("M22") for use

25   at the Property.  The M22 was in operation at the Property from approximately 1976 through

26   1998.

27   27.    Mr. Hahn formed Multimatic Corp., incorporating it in the state of New Jersey  on

28   September 19, 1989.  Multimatic Corp.'s incorporation documents indicate 8,000,000 shares were

5

1   issued and listed its corporate offices as the Multimatic Facility in Northvale, New Jersey.

2        28.   Multimatic merged into Multimatic Corp. on November 19, 1991.  Mr. Hahn was

3   the President of both companies, as evidenced by the Certificate of Merger filed with the state of

4   New Jersey.

5        29.   Mr. Hahn owned 100% of both Multimatic and Multimatic Corp. from their

6   inception until his death in 1999.

7        30.   Mr. Hahn ran and directed operations for Multimatic and Multimatic Corp. from

8   their inception until his death in 1999.

9        31.   Third Party Plaintiff is informed and believes that, at all times relevant, Multimatic

10   and/or Multimatic Corp. carried insurance to cover liabilities arising from its business, including

11   coverage of pollution or contamination of the type alleged in this lawsuit.

12        32.   Third Party Plaintiff is informed and believes, and thereon alleges that the merger

13   did not affect the nature of the business previously conducted by Multimatic, and that Multimatic

14   Corp. continued Multimatic's operations.

15        33.   After Mr. Hahn's death, a man named Ron Velli ran Multimatic Corp.

16        34.   Mr. Velli began working for Multimatic in the late 1970s.

17        35.   Before Mr. Hahn's death, Mr. Velli helped run Multimatic Corp.  Mr. Velli's

18   positions at Multimatic Corp. included National Sales & Technical Manager.

19        36.   Mr. Velli formed Ron Velli LLC on August 28, 2003 to obtain assets from

20   Multimatic Corp.

21        37.  On or about October 31 2003, Multimatic Corp. sold substantial assets to Ron Velli

22   LLC in an asset purchase agreement ("Asset Purchase Agreement").  The Asset Purchase

23   Agreement is attached to this Third Party Complaint as Exhibit A.  Assets purchased under this

24   agreement include the rights to the Multimatic name and trademark, all dry cleaning equipment

25   and parts, and all goodwill related to the business.

26        38.   Ron Velli LLC paid $589,991.48 for Multimatic Corp.'s assets under the Asset

27   Purchase Agreement.  Of the $589,991.48, Ron Velli paid $339,991.48 via personal check.  Ron

28   Velli LLC paid the balance via promissory note.

1    39.    Third Party Plaintiffs are informed and believe the Asset Purchase Agreement

2  transferred all or substantially all of Multimatic Corp.'s assets to Ron Velli LLC.

3    40.    Third Party Plaintiffs also allege, on information and belief, Ron Velli LLC

4  underpaid Multimatic Corp for these assets.

5    41.    While the Asset Purchase Agreement granted Ron Velli LLC substantial assets, it

6  left Multimatic Corp. with all or substantially all of the liabilities.

7    42.    The Asset Purchase Agreement left ownership of the Multimatic Facility at 162

8  Veterans Drive in Northvale, New Jersey in Multimatic Corp's name.

9    43.    No later than November 20 2003, twenty days after the Asset Purchase Agreement

10  was executed, the New Jersey Department of Environmental Protection opened a Multi-Phased

11  Remedial Action against Multimatic Corporation for discharge of hazardous substances, including

12  PCE, to soil and groundwater at the Multimatic Facility.

13    44.    Third Party Plaintiff is informed and believes that the parties who devised the

14  Asset Purchase Agreement knew before its signing that the Multimatic Facility and surrounding

15  property had been contaminated with PCE as a result of the operation of Multimatic dry cleaning

16  machines in the testing, design and manufacture process via both disposal of waste water

17  containing PCE and spills and leaks from their machines, the same as are alleged to have occurred

18  at the Property at issue in this action.

19    45.    As a result of the contamination at the Multimatic Facility and the New Jersey

20  Department of Environmental Protection's action, ownership of the Multimatic Facility retained

21  by Multimatic Corp had little to no value because of the environmental clean-up required there.

22    46.    On or about June 24 2004, Multimatic Corp. changed its name to Kirrberg.  The

23  Certificate of Amendment filed with the New Jersey State Treasurer indicates that at the time of

24  this name change there were only 6 outstanding shares of Multimatic Corp. stock.

25    47.    Kirrberg has never been involved in the dry cleaning business.

26    48.    Third Party Plaintiff is informed and believes the nature of Kirrberg's business is

27  to collect rent from Multimatic LLC for its use of the Multimatic Facility.  The November 1, 2003

28  lease agreement between Multimatic Corp., as lessor, and Ron Velli LLC, as lessee, is attached

hereto as Exhibit B.

49.     On or about June 30 2004, Ron Velli LLC changed its name to Multimatic LLC.

50.     Multimatic LLC continues to operate out of the Multimatic Facility at the New Jersey Property, just as Multimatic Corp did before the Asset Purchase Agreement.

51.     Multimatic LLC is the successor in interest to Multimatic Corp. through de facto merger, alter ego or other related theories.

52.     Plaintiffs are informed and believe, and thereon allege that Multimatic, Multimatic Corp., Multimatic LLC, and Kirrberg are liable individually and as the parent corporations, purchasing corporations, alter egos, agents, assignees, surviving entities and/or successors-in-interest of each other.

53.     Multimatic and Multimatic Corp. designed, manufactured, formulated, packaged, distributed, sold and/or installed products–dry cleaning machines and related filtration, distillation, and solvent recovery equipment–containing chlorinated solvents and/or dry cleaning equipment specifically designed to store, use, process, and dispose of chlorinated solvents, including the M22.

54.     Multimatic and Multimatic Corp. represented, asserted, claimed and warranted that their products were safe and could be operated without causing injury or damage.

55.     Multimatic entities knew, or should have known, that their products–when operated as intended caused contamination of the environment.

56.      Ms. Heim is informed and believes Multimatic and Multimatic Corp. took affirmative steps to dispose of PCE through their design, manufacture, formulation, packaging, distribution, sale and/or installation of dry cleaning equipment used by Plaintiffs and/or Third Party Plaintiffs on the Property.

57.     Multimatic designed equipment used at the site, the M22.

58.     Multimatic instructed Third Party Plaintiffs how to dispose of wastewater contaminated with PCE, the production of which was an unavoidable result of proper use of the M22.

59.     The method of disposal mandated by Multimatic's design and instruction of this

8

1   equipment resulted in environmental contamination at and near the Property because wastewater

2   produced by the M22 was directed to the drain.

3      60.   Multimatic warranted that its products were safe and could be operated without

4   causing injury or damage to people, property or the environment.

5      61.   Multimatic planned for its products, including the M22, when operated as

6   intended, to cause contamination of the environment.  Through its design and instruction for

7   contaminated waste water disposal, Multimatic planned for releases of PCE into the environment.

8      62.   Multimatic and Multimatic Corp. caused contamination at and near the Property.

9   The Multimatic dry cleaning machine created wastewater containing PCE by its regular use.

10  Through its design and instruction, Multimatic intended and mandated this wastewater be

11  disposed of down the drain, sink and/or sewer.  The creation and disposal of wastewater was a

12  necessary and inherent step in the function of Multimatic's machine.

13     63.   *Design, Testing, and Manufacture*

14     During the manufacturing process, Multimatic's testing involved running dry cleaning

15  cycles with real clothes to learn how a dry cleaner would operate the Multimatic machine.

16  Multimatic employees used PCE in this process and company representatives, including Ron Velli

17  and Horace Hahn, were aware that separator water could pose an environmental danger if

18  disposed of down the drain because it contained unsafe levels of PCE.  Multimatic knew at least

19  as early as 1970 that PCE was a hazardous substance.

20     64.   *Design and Manufacture Defects Cause PCE Spills*

21     Multimatic designed their dry cleaning machines to dispose of contaminated waste water

22  into the environment.  Even though it intended and was aware of this result during the design and

23  manufacture process, it nevertheless persisted in producing machines of faulty design and poor

24  manufacture quality.  Multimatic employees, executives, and representatives witnessed spills and

25  releases of PCE at Multimatic's plant and testing site in New Jersey (Multimatic Facility

26  referenced *supra*).  These incidents were caused by flaws in Multimatic's equipment, including

27  the poor quality of the hoses used to transport PCE and wastewater containing PCE, the quality of

28  the connections on the machinery, including hose connection to the equipment, shrinkage of hoses

9

1  and leaking gaskets connecting the still to the dry cleaning machine, resulting in the release of

2  PCE and PCE vapors.

3      Several spills occurred at Multimatic's plant during the manufacturing process during the

4  late 1970s and early 1980s. Despite the known potential for spills and releases of PCE,

5  Multimatic failed to fix the design and manufacturing flaws that caused them. Multimatic's

6  failure to fix these hazardous-spill causing inadequacies constitutes an affirmation of such

7  disposals, i.e., Multimatic intended PCE disposal to occur and contributed to contamination at the

8  Property, where such spills did occur.

9      Even though it was aware of PCE-spills caused by regular operation of its equipment,

10  Multimatic failed to adequately warn its customers regarding the dangers inherent in operating its

11  machinery and the potential for environmental contamination. In fact, Multimatic did the

12  opposite and instructed dry cleaners to dispose of wastewater containing PCE down the drain.

13      Defects in the M22 used at the Property resulted in several spills annually at the Property.

14  For example, one spill in 1983, on information and belief, caused 20 gallons of PCE to spill out of

15  the M22. This spill was caused by a the failure of a clamp and seal on the machine. These and

16  other mechanical failures were frequent causes of spills and leaks from the M22 at the Property.

17  Multimatic's equipment at the Property in this litigation had multiple spills and releases of PCE.

18      (3)    *Resulting Property Damage*

19      Multimatic's acts outlined above caused physical injury to both the Property and

20  surrounding properties. After PCE was deposited down the drain, it flowed into the sewer, where

21  it escaped into soil and groundwater at and surrounding the Property. Releases from the sewer are

22  ongoing in nature as PCE leaks out through defects in the pipes. Releases from the sewer

23  occurred when wastewater containing PCE was directed into the sewer and also subsequent to the

24  deposits because releases are slow and occur over time. PCE erodes materials commonly used to

25  build sewer pipes, further contributing to its escape into the environment.

26       As a result, soil and groundwater at and near the Property are contaminated and its use is

27  impaired. Digging in it poses a threat to the health of the public, the private owner, and anyone

28  else occupying the Property. Soil contamination has created toxic soil vapors that pose a danger

1    to public health and can easily escape into the air when soil is moved or displaced.

2          Multimatic's faulty equipment design further caused PCE spills and leaks at the Property.

3    During a spill or leak, PCE flowed out of the dry cleaning business and came into contact with

4    soil on the Property, where it was absorbed and contributed to soil and groundwater

5    contamination at and near the Property.  Additionally, the cleanup of these spills and leaks

6    required disposal of PCE down the drain, which proximately caused environmental contamination

7    as described in the preceding paragraph.

8          Use of the equipment caused leaks and spills resulting in PCE contamination of soil and

9    groundwater via direct contact.  These disposals continued through the last operation of the

10   Multimatic at the Property.  Even after the machine was removed from the Property, the

11   contaminated wastewater it produced continued to pollute soil and groundwater at and near the

12   Property due to the slow release of PCE accumulated in the City's sewers.

13         65.    As a result of the damage caused by intentional acts of the Multimatic entities and

14   the M22, Third Party Plaintiff has incurred substantial cleanup costs.

15         66.    As a direct and proximate result of Multimatic entities' the condition of the

16   Property, including but not limited to the sewer, storm drain, and water facilities was such that it

17   resulted in the release of hazardous substances onto the Property, and surrounding properties, soil,

18   and groundwater.

19         **67.    Third Party Plaintiff is informed and believes that ALMI took affirmative**

20   **steps to dispose of PCE through its design, manufacture, formulation, packaging,**

21   **distribution, sale and/or installation of dry cleaning equipment used by Plaintiffs and/or**

22   **Third Party Plaintiff on the Property.  ALMI designed, manufactured and sold equipment**

23   **used at the Property, namely the Ajax Model 218 Vapor Adsorption Unit, Serial #**

24   **21821760784 ("Ajax machine").  ALMI Controller, Stephen Crank, has signed an affidavit**

25   **stating that this Ajax machine was sold by ALMI in 1984.   The Ajax machine was, based on**

26   **information and belief, used at the Property from approximately 1980 through 1994.  The**

27   **method of disposal mandated by design and instruction in the manual for this equipment**

28   **resulted in environmental contamination at and near the Property because wastewater**

11

containing PCE produced by the machine was directed to a drain or trough.  ALMI warranted that its products were safe and could be operated without causing injury or damage.  ALMI planned for its product, when operated as intended, to cause contamination of the environment.

ALMI caused contamination at and near the Property.  The Ajax machine created wastewater containing PCE by its regular use.  Through its design and instruction, ALMI intended and mandated this wastewater be disposed of down the drain, sink and/or sewer.  The creation and disposal of wastewater was a necessary and inherent step in the function of the Ajax machine.

(1)    *Dry Cleaning Industry*

At all times relevant to this pleadings, ALMI belonged to dry cleaning trade associations, such as the International Fabricare Institute ("IFI").  Membership in these organizations provided dry cleaning equipment manufacturers, including ALMI, with up-to-date information regarding the hazards of PCE and wastewater disposal down the sewer.

(2)    *Ajax Vapor Adsorber Operator's Manual*

Section 2.10 Water Separator Connections of the ALMI Machine manual directs:

> Connect the water overflow outlet (6, Figure 1-2) to a suitable waste water drain or trough.  If connected to a rigid drain the connecting line can be flexible.  Using copper tubing or other pipe suitable for "perc" service, connect the "perc" overflow (7) to the storage tank of the cleaning unit.

The Heims followed this instruction at the dry cleaning store at the Property: the wastewater from the ALMI machine was plumbed to the drain.  Essentially, air from the dry cleaning machine was directed into the ALMI machine, the carbon in the ALMI machine collected the PCE.  Once a week, a steam would be run through the ALMI machine to "strip" the PCE from the Carbon.  This created separator water containing PCE.  The ALMI machine yielded approximately 10 gallons of contaminated wastewater per week.  For many years, the Heims had no place to dispose of this waste except down the drain and were following ALMI's direction in doing so.

12

1

### (3)    *Design and Manufacture Defects Cause PCE Spills*

2      **The ALMI machine, even when operated properly, had several defects causing spills**

3  **and leaks at the Property.  Flaws in the ALMI machine included the poor quality of the**

4  **hoses and seals used to transport PCE and wastewater containing PCE, the quality of the**

5  **connections on the machinery, including hose connection to the equipment, shrinkage of**

6  **hoses and leaking gaskets resulting in the release of PCE and PCE vapors.**

7      **Several times the machine required repair because it was leaking PCE.  Leaks came**

8  **from water separator and gaskets- PCE fell on concrete and was not believed to be caused**

9  **by the operator's malfunction.  Up to 2 gallons of PCE resulted from each spill onto the**

10 **concrete.  At least one leak was due to the clear hose on the condenser pulling off because it**

11 **had shrunk due to exposure to PCE, water and heat.  Ajax had actual hoses that would get**

12 **hard and shrink and pull away from their fittings.**

13     **ALMI failed to adequately warn its customers regarding the dangers inherent in**

14 **operating its machinery and the potential for environmental contamination.  In fact, ALMI**

15 **did the opposite and instructed dry cleaners to dispose of wastewater containing PCE down**

16 **the drain.**

17

### (4)    *Resulting Property Damage*

18      **ALMI's acts outlined above caused physical injury to both the Property and**

19 **surrounding properties.  After wastewater containing PCE was deposited down the drain, it**

20 **flowed into the sewer, where it escaped into soil and groundwater at and surrounding the**

21 **Property.  As a result, soil at the Property is contaminated and its use is impaired.  Digging**

22 **in it poses a threat to the health of the public, the private owner, and anyone else occupying**

23 **the Property.  Soil contamination has created toxic soil vapors that pose a danger to public**

24 **health and can easily escape into the air when soil is moved or displaced.**

25     **ALMI's faulty equipment design further caused PCE spills and leaks at the**

26 **Property.  During a spill or leak, PCE flowed out of the dry cleaning business and came into**

27 **contact with soil on the Property, where it was absorbed and contributed to soil and**

28 **groundwater contamination at and near the Property.  Additionally, the cleanup of these**

1  **spills and leaks required disposal of PCE down the drain, which proximately caused**

2  **environmental contamination as described in the preceding paragraph.**

3  **        Use of the equipment caused leaks and spills resulting in PCE contamination of soil**

4  **and groundwater via direct contact.  These disposals continued through the last operation of**

5  **the ALMI machine at the Property.  Even after the machine was removed from the**

6  **Property, the contaminated wastewater it produced continued to pollute soil and**

7  **groundwater at and near the Property due to the slow release of PCE accumulated in the**

8  **City's sewers.**

9  **        68.        As a result of the damage caused by intentional acts of ALMI and the Project**

10  **One Parties, Third Party Plaintiff has incurred substantial cleanup costs.**

11  **        69.        As a direct and proximate result of ALMI and Project One Parties the**

12  **condition of the Property, including but not limited to the sewer, storm drain, and water**

13  **facilities was such that it resulted in the release of hazardous substances onto the Property,**

14  **and surrounding properties, soil, and groundwater.**

15  **FIRST CLAIM FOR RELIEF**

16  **(Contribution Pursuant to CERCLA § 113(f)**)

17  70.  Ms. Heim realleges and incorporates by reference the allegations contained in

18  Paragraphs 1 through 69 as though fully set forth herein.

19  71.        The Property is a "facility" within the meaning of section 101(9) of CERCLA, 42

20  U.S.C. § 9601(9). The contaminants located in the soil and ground water at, on, or under the

21  Property, including but not limited to PCE, are "hazardous substances" within the meaning of 42

22  U.S.C. § 9601(14).

23  72.        The City's sewer system connecting to and servicing the Property is a "facility"

24  within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).  The contaminants

25  located in the soil and groundwater near the Property, including but not limited to PCE, are

26  "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

27  73.        Plaintiff and City are liable persons within the meaning of section 1(a) of

28  CERCLA, 42 U.S.C. § 9607( A ).

14

74.     Multimatic entities are liable within the meaning of 42 U.S.C. § 9607(a)(3) because they took intentional steps to dispose of a hazardous substance, PCE, as described in Ms. Heim's general allegations *supra*.

**75.     Project One Parties are liable persons within the meaning of section 1(a) of CERCLA, 42 U.S.C. § 9607( A ).**

**76.     ALMI and Project One Parties are liable within the meaning of 42 U.S.C. § 9607(a)(3) because they took intentional steps to dispose of a hazardous substance, PCE, as described in Ms. Heim's general allegations *supra*.**

77.     The complaint filed by Plaintiff and cross-complaint by City constitutes a civil action within the meaning of section 113(f) of CERCLA, 42 U.S.C. section 9613(f)(1).

78.     Ms. Heim has incurred response costs, including but not limited to costs to investigate, assess, the evaluate, monitor and/or respond to the releases and threatened releases of hazardous substances at the property as defined in sections 101(23), (24), and (25).Ms. Heim will incur such costs in the future.

79.     Ms. Heim incurred her response costs in a manner not inconsistent with the national contingency plan.

80.      Ms. Heim is entitled to 100% contribution from Multimatic entities or contribution and such other percentage as of this court deems appropriate, pursuant to CERCLA sections 113(f)(1).


**SECOND CLAIM FOR RELIEF**

**(Cost Recovery Pursuant to CERCLA § 107(a))**

81.     Ms. Heim realleges and incorporates by reference the allegations contained in Paragraphs 1 through 80 as though fully set forth herein.

82.     The Property is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9). The contaminants located in the soil and ground water at, on, or under the Property, including but not limited to PCE, are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

15

83. The City's sewer system connecting to and servicing the Property is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9). The contaminants located in the soil and groundwater near the Property, including but not limited to PCE, are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

84. Multimatic entities are a liable or potentially liable person within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a), who arranged for the disposal or treatment of hazardous substances, including PCE, and as described in the general allegations above.

**85. ALMI and Project One Parties are liable or potentially liable persons within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a), who arranged for the disposal or treatment of hazardous substances, including PCE, and as described in the general allegations above.**

86. Under Section 107 of CERCLA, 42 U.S.C. § 9607, Ms. Heim seeks recovery of necessary costs of responses and payment from Multimatic entities, and each of them, for Ms. Heim's outlays of all past, present, and future necessary response costs incurred in response to the release of hazardous substances at or affecting the Property or surrounding properties. The release and disposal of the hazardous substances is continuing in nature.

87. Ms. Heim has incurred, and will continue to incur, necessary response costs, including costs of investigation, removal and/or remedial actions in the investigation, clean up and abatement of the releases and threatened releases of hazardous substances from Plaintiff's and City's ownership, operations and activities at and/or near the Property. All of the necessary response costs incurred and to be incurred by Ms. Heim are a result of the contamination of the Property and surrounding properties, caused by Counter and Third Party Defendants.

88. All costs incurred, and to be incurred, by Ms. Heim are necessary costs of response consistent with the provisions of CERCLA and the National Contingency Plan.

89. Ms. Heim continues to incur response costs and other costs in connection with the investigation and remediation of the Property. There has been no completion of a removal action.

90. Multimatic entities, and each of them, are jointly and severally liable to Third Party claimant pursuant to 42 U.S.C. § 9607 for all of the past, present and future necessary costs of

16

1  response including without limitations, investigation and remediation expenses, attorneys' fees,

2  oversight costs and interest, in an amount to be determined at trial.

3       91.    Pursuant to 42 U.S.C. § 9613(g)(2), Third Party claimant is entitled to a declaratory

4  judgment that Multimatic entities, and each of them, are liable in any subsequent action by Ms.

5  Heim to recover further responses costs or damages incurred as a result of hazardous substances at

6  and around the Property.

7       **92.**    **ALMI and Project One Parties, and each of them, are jointly and severally**

8  **liable to Third Party Plaintiff pursuant to 42 U.S.C. § 9607 for all of the past, present and**

9  **future necessary costs of response including without limitations, investigation and**

10  **remediation expenses, attorneys' fees, oversight costs and interest, in an amount to be**

11  **determined at trial.**

12       **93.**    **Pursuant to 42 U.S.C. § 9613(g)(2), Third Party Plaintiff is entitled to a**

13  **declaratory judgment that ALMI and Project One Parties, and each of them, are liable in**

14  **any subsequent action by Ms. Heim to recover further responses costs or damages incurred**

15  **as a result of hazardous substances at and around the Property.**

16  **THIRD CLAIM FOR RELIEF**

17  **(Hazardous Substance Statutory Indemnity)**

18       94.    Ms. Heim realleges and incorporate by reference the allegations contained in

19  Paragraphs 1 through 93 as though fully set forth herein.

20       95.    The Carpenter-Presley-Tanner Hazardous Substance Account Act, California

21  Health & Safety Code Sections 25300, 25395 (hereinafter the "HSAA") was enacted to encourage

22  expedient clean-up of contaminated properties.  To provide such encouragement, the legislature

23  included the statutory right of indemnification for those parties who incur response costs and

24  those parties who are responsible for the contamination.  The responsible parties include owners

25  and operators of the facilities at the time the alleged hazardous substance is allegedly discharged

26  into the environment for such facility.  As alleged in the general allegations above, counter and

27  third-party defendants are owners and operators of qualifying facilities.

28       96.    Ms. Heim has and will continue to incur costs arising from the hazardous

17

1  substance contamination of the soil and groundwater in and around the Property.

2      97.    Ms. Heim, and each of them, are liable persons under the HSAA due to their status

3  as either owners and operators of the Property or the sewers.  Additionally, Third Party

4  Defendants arranged for the disposal and discharge of hazardous substances on account of said

5  Defendants' actual and direct control of the method of disposal of PCE on and near the Property,

6  and such liability has not previously been discharged pursuant to any state apportionment

7  proceeding.  Ms. Heim is entitled to indemnification and contribution from Defendants, in whole

8  or in part, based upon California Health & Safety Code Section 25363(e).

9                          **FOURTH CLAIM FOR RELIEF**

10                              **(Negligence)**

11      98.    Ms. Heim realleges and incorporate by reference the allegations contained in

12  Paragraphs 1 through 98 as though fully set forth herein.

13      99.    Ms. Heim is informed and believes, and thereon alleges, that during Ms. Heim's

14  and Plaintiffs' ownership and/or operation of a dry cleaner on the Property, sudden and accidental

15  releases of PCE have occurred, resulting in contamination at the Property. Some of the sudden and

16  accidental releases are attributable to Third Party Defendants' negligence in failing to: properly

17  use solvents, supervise the operation of equipment on the Property, and cleanup of spilled

18  solvents. Third Party Defendants failed to warn against such occurrences and the potential for

19  property damage and harm to the environment based on the nature of PCE.

20      100.    Third Party Defendants breached their duty by negligently causing, permitting

21  and/or contributing to contamination at the Property, and other land and water near the Property.

22      101.    As a proximate result of Third Party Defendants' negligence, Ms. Heim has

23  suffered damages including, but not limited to response costs incurred and to be incurred in the

24  future to properly respond to the alleged hazardous substance contamination in and around the

25  Property, and related costs.  Such costs also include attorneys' fees and consultants' fees incurred

26  as a direct and proximate result of said negligence.

27                          **FIFTH CLAIM FOR RELIEF**

28                              **(Negligence Per Se)**

18

102.    Ms. Heim realleges and incorporates by reference the allegations contained in Paragraphs 1 through 101 as though fully set forth herein.

103.    The foregoing acts and/or omissions violate California Civil Code Sections 3281-3282, 3497; California Health & Safety Code Sections 5411, et seq.; California Water Code Sections 13000, et seq.; and Fish & Game Code Sections 5650, et seq., which provide a standard of care and duty of care by which Third Party Defendants are held.  Third Party Defendants' conduct has breached said duties of care thereby constituting negligence per se.

## SIXTH CLAIM FOR RELIEF

### (Common Law Contribution)

104.    Third Party Complainant realleges and incorporates by reference the allegations contained in Paragraphs 1 through 103 as though fully set forth herein.

105.    In the event liability should be established on the part of Ms. Heim, which liability is expressly denied, Ms. Heim is informed and believes, and thereon alleges, that it may be obligated to pay sums representing a percentage of liability not Ms. Heim's own, but rather that of Counter and Third Party Defendants.  Therefore, Ms. Heim requests an adjudication and determination with respect to degrees of liability, if any, on its part and on the part of Counter and Third-Party Defendants so as to determine that portion of the amount, if any, by which Ms. Heim is found liable, which actually represents a portion of liability of all of the Counter and Third-Party Defendants.

## SEVENTH CLAIM FOR RELIEF

### (Indemnification)

106.    Third-Party Complainant realleges and incorporates by reference the allegations contained in Paragraphs 1 through 105 as though fully set forth herein.

107.    A determination of the proportionate degree of liability, if any, of Ms. Heim, on the one hand, and Third Party Defendants, on the other, is necessary to protect the rights of Ms. Heim.

108.    An actual controversy has arisen and now exists relating to the legal rights and duties of Ms. Heim, Counter and Third-Party Defendants, and each of them, for which Ms. Heim desires a declaration of their rights and indemnification, in which Ms. Heim contends, and is

19

1   informed and believes that Counter and Third-Party Defendants deny, the following:

2       A.     That as between these parties, the responsibility, if any, for the damages claimed by

3   Plaintiff and/or Ms. Heim rests entirely on Counter and Third-Party Defendants;

4       B.     That as a result, Counter and Third-Party Defendants are obligated to partially

5   indemnify or fully indemnify Ms. Heim for sums that Third Party Complainant may be held to pay

6   as a result of any damages, judgments, settlement or other awards recovered against Ms. Heim by

7   the Court, federal or state government, or private party as a result of the toxic chemical

8   contamination of the Property, properties near and adjacent properties including, but not limited

9   to, surface and subsurface soil and water; and

10      C.     Ms. Heim is informed and believes that Counter and Third-Party Defendants deny

11  any such liability.

12      109.    Ms. Heim is entitled by State statute to, and hereby requests, a judicial

13  determination of her rights, indemnification and contribution, any declaration that Counter and

14  Third-Party Defendants and/or others, and not Ms. Heim, is liable for all of the costs incurred, and

15  to be incurred to remove, clean-up and remediate the alleged hazardous substance contamination

16  of the soil and groundwater in and around the Property.

17                           **EIGHTH CLAIM FOR RELIEF**

18                      **(Porter-Cologne Statutory Contribution)**

19      110.    Third Party Complainant realleges and incorporates by reference the allegations

20  contained in Paragraphs 1 through 109 as though fully set forth herein.

21      111.    The Porter-Cologne Act provides for statutory contribution to those persons who

22  become liable for the investigation, clean-up and remediation of hazardous substance

23  contamination to groundwater.  To the extent Ms. Heim incurs costs and expenses in response to

24  the alleged hazardous substance contamination of the soil and groundwater in and around the

25  Property, Ms. Heim is statutorily entitled to contribution pursuant to Water Code Section 13350(j)

26  and hereby requests contribution and indemnification pursuant to that section as against the

27  Counter and Third-Party Defendants, and each of them jointly and severally.

28

## NINTH CLAIM

### (Public Nuisance)

112.   Ms. Heim realleges and incorporates by reference the allegations contained in Paragraphs 1 through 111 as though fully set forth herein.

113.   The contamination on and about the Property constitutes a public nuisance within the meaning of California Water Code Section 13050(m), and California Civil Code Sections 3479 and 3480.

114.   Ms. Heim is informed and believes, and on that basis alleges, that the contamination is continuing and abatable.

115.   As a proximate result of the nuisance, the Ms. Heim has been, and will be, damaged by incurring costs to respond to the alleged hazardous substance contamination in and around the Property in an amount to be established at trial.

116.   Ms. Heim has suffered, and will continue to suffer, harm that is different from the type of harm suffered by the general public as a result of the public nuisance, as alleged herein, because Ms. Heim has incurred, and will continue to incur, costs and expenses to investigative and respond to the contamination.

## TENTH CLAIM FOR RELIEF

### (Public Nuisance Per Se)

117.   Ms. Heim realleges and incorporates by reference the allegations contained in Paragraphs 1 through 116 as though fully set forth herein.

118.   Ms. Heim alleges that the conduct of Third-Party Defendants, and each of them, which has resulted in contamination of soil and groundwater on and about the Property, and surrounding properties, and constitutes a public nuisance, is a violation of California Water Code Sections 13050(m), 13304, 13350, and 13387, and California Health & Safety Code sections 5411, 5411.5, and 117555, the purposes of which are to set a standard of care or conduct to protect Ms. Heim, and all persons and property of the general public at large, as well as the environment, from the type of conduct engaged in by Third Party Defendants, and each of them. Therefore, such improper activities and violations constitute a public nuisance *per se*.

21

119.    Third-Party Defendants, and each of them, have failed to comply with the state law as detailed above.  Ms. Heim has sustained special injury as a result of this public nuisance, including investigative costs, attorneys fees, and other costs, as described herein.  As a further direct and proximate cause of the public nuisance *per se* created by Third-Party Defendants, and each of them, Ms. Heim has suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial. Ms. Heim seeks abatement of the public nuisance, and all other legally available costs and damages.

120.    Ms. Heim further requests that the public nuisance, as described herein, be enjoined or abated.

## ELEVENTH CLAIM FOR RELIEF

### (Equitable Indemnity)

121.    Ms. Heim realleges and incorporates by reference the allegations contained in Paragraphs 1 through 120 as though fully set forth herein.

122.    In the event liability should be established in this action or in any administrative or regulatory action based on the contamination alleged in this action, whose liability is expressly denied, Ms. Heim alleges on information and belief that such liability will arise wholly or partly by reason of the conduct of the Third-Party Defendants, and/or that Third-Party Defendants are jointly liable for said liability.  Third-Party Defendants are therefore, bound and obligated to defend, indemnify and hold harmless Ms. Heim from and against any and all claims, losses, damages, attorneys' fees, judgments and settlement expenses incurred, or to be incurred, in this action by Ms. Heim.

123.    Ms. Heim hereby alleges in the event liability should be established, third party defendants will be obligated to indemnify Ms. Heim on a products liability theory.  Manufacture, design, and warning defects associated with third party defendants' equipment obligates them under an equitable indemnity theory to contribute for an amount of damages equitably apportioned.

124.    Ms. Heim intends this pleading to be notification to Third-Party Defendants that Ms. Heim hereby tenders to them the obligation to defend Ms. Heim, pursuant to California Code

22

of Civil Procedure Section 1021.6, and that as a result of Third-Party Defendants conduct, Ms. Heim has been required to defend an action by Plaintiffs, based on the contamination, and hereby demands defense and indemnity from Third-Party Defendants.  Ms. Heim is informed and believes, and thereon alleges, that Third-Party Defendants refused said demands of tender of defense by Ms. Heim.

125.    Ms. Heim has necessarily retained legal counsel to defend her at her sole cost and expense and to prepare, file and prosecute counterclaims and a third-party complaint as set forth herein.  Ms. Heim has incurred, and will continue to incur, liability for attorneys' fees and defense costs and, in the prosecution of this Third Party complaint, a sum which is presently not ascertained but will be proven at trial.

**TWELFTH CLAIM FOR RELIEF**

**(Declaratory Relief)**

126.    Ms. Heim realleges and incorporates by reference the allegations contained in Paragraphs 1 through 125 as though fully set forth herein.

127.    A determination of the proportionate degree of liability, if any, of Third-Party Complainant, on the one hand, and Third-Party Defendants, on the other, is necessary to protect the rights of Third-Party Complainant.

128.    An actual controversy has arisen and now exists relating to the legal rights and duties of Third-Party Complainant and Third-Party Defendants, and each of them, for which Third-Party Complainant desires a declaration of their rights and indemnification, in which Third-Party Complainant contends, and Third-Party Complainant is informed and believes that Third-Party Defendants deny, the following:

A.    That as between these parties, the responsibility, if any, for the damages claimed by Third-Party Plaintiff rests entirely on Counter and Third-Party Defendants;

B.    That as a result, Third-Party Defendants are obligated to partially indemnify or fully indemnify Third-Party Complainant for sums that Third-Party Complainant may be held to pay as a result of any damages, judgments, settlement or other awards recovered against Third-Party Complainant by the federal or state government or private party as a result of the toxic

23

1  chemical contamination of the Property, properties near and adjacent properties including, but not

2  limited to, surface and subsurface soil and water; and

3       C.    Third-Party Complainant is informed and believes that Third-Party Defendants

4  deny any such liability.

5       129.   Third-Party Complainant is entitled to, and hereby requests, a judicial

6  determination of Third-Party Complainant's rights, indemnification and contribution, any

7  declaration that Third-Party Defendants and/or others, and not Third-Party Complainant, is liable

8  for all of the costs incurred, and to be incurred to remove, clean-up and remediate the alleged

9  hazardous substance contamination of the soil and groundwater in and around the Property.

10                    **THIRTEENTH CLAIM FOR RELIEF**

11                    **(STRICT PRODUCTS LIABILITY)**

12                    (Multimatic Entities and ALMI)

13      130.   Third-Party Complainant realleges and incorporates by reference the allegations

14  contained in Paragraphs 1 through 129 as though fully set forth herein.

15      131.   Third-Party Complainant is informed and believes, and thereon alleges that

16  Multimatic entities designed, manufactured, formulated, packaged, distributed, sold and/or

17  installed products–dry cleaning machines and related filtration, distillation and solvent recovery

18  equipment–containing chlorinated solvents and/or dry cleaning equipment specifically designed to

19  store, use, process, and dispose of chlorinated solvents.

20      **132.   Third-Party Complainant is informed and believes, and thereon alleges that**

21  **ALMI designed, manufactured, formulated, packaged, distributed, sold and/or installed**

22  **products–dry cleaning machines and related filtration, distillation and solvent recovery**

23  **equipment–containing chlorinated solvents and/or dry cleaning equipment specifically**

24  **designed to store, use, process, and dispose of chlorinated solvents.**

25      133.   Third-Party Complainant is informed and believes, and thereon alleges that the

26  Third-Party Defendants represented, asserted, claimed and warranted that chlorinated solvents

27  and/or chlorinated solvent equipment could be used in conformity with accompanying instructions

28  and labels in a manner which would not cause injury or damage.

24

134.    Third-Party Complainant is informed and believes, and thereon alleges that Third-Party Defendants knew, or should have known that the chlorinated solvents and/or chlorinated solvent equipment would be used without inspection for defects, and if any inspection performed, that the defects would not be discovered with the exercise of reasonable diligence.

135.    Third-Party Complainant is informed and believes, and thereon alleges that Third-Party Defendants designed, manufactured, formulated, packaged, distributed, sold, applied, disposed of, and/or installed products containing chlorinated solvents and/or chlorinated solvent equipment.  Third-Party Defendants knew, or should have known, that exposure to chlorinated solvents would create risk of harms to human health and contaminate soils and groundwater.

136.    Third-Party Complainant is informed and believes, and thereon alleges, that at all relevant times the Third-Party Defendants:

(a)    Were aware of the use of chlorinated solvents in the dry cleaning process or as cleaning solvents;

(b)    Were aware of the typical waste and disposal practices resulting from the intended use of their dry cleaning equipment.  Despite such knowledge, these defendants designed their equipment in such a manner that would result in spills, leaks, and/or discharge of chlorinated solvents during normal operations;

( c )    Improperly designed their chlorinated solvent dry cleaning equipment by failing to provide appropriate mechanisms to prevent and/or treat releases or spills of chlorinated solvents and its by-products for such equipment;

(d)    Failed to design proper mechanisms which would eliminate prevent and/or treat contamination arising from the dry cleaning process performed by the defendants' equipment, such as contamination from separator waste water, spent filter materials,  and similar hazardous waste by products;

(e)    Knew or should have known of appropriate equipment redesigns, retrofits, and/or modifications to protect against environmental contamination associated with use of such equipment, and negligently and/or consciously

1    disregarded this knowledge and failed to redesign, modify, and/or retrofit

2    the subject equipment.  Safer alternative designs and cleaning processes

3    were scientifically feasible and economical.  Safer alternative methods of

4    disposal and/or treatment of waste water were also scientifically feasible

5    and economical;

6        (f)    Failed to Warn Third-Party complainant and all other users of their

7    products that the recommended methods of use and disposal of their

8    products would–in fact–cause pollution.

9    137.   Third-Party Complainant is informed and believes, and thereon alleges that the

10   above described defects in chlorinated solvents and chlorinated solvent dry cleaning machines

11   existed when the chlorinated solvents and chlorinated solvent dry cleaning machines left the

12   Third-Party Defendants' possession.  The chlorinated solvents and chlorinated solvent dry

13   cleaning machines were used in a manner in which they were foreseeably intended to be used.

14   138.   As a proximate result of the defects alleged herein the Third-Party Defendants

15   caused Third-Party Complainant's damages including, but not limited to, response costs incurred

16   and to be incurred in the future to properly respond to the alleged PCE contamination in and

17   around the Property, and related costs in making the property safe from contamination.  Such

18   costs also include attorneys' fees and consultants' fees incurred as a direct and proximate result of

19   said negligence.

20   **FOURTEENTH CLAIM FOR RELIEF**

21   **(Implied Indemnification)**

22   (Project One Parties only)

23   **139.    Third-Party Complainant realleges and incorporates by reference the**

24   **allegations contained in Paragraphs 1 through 138 as though fully set forth herein.**

25   **140.    In the event liability should be established in this action or in any**

26   **administrative or regulatory action based on the contamination alleged in this action, whose**

27   **liability is expressly denied, Ms. Heim alleges on information and belief that such liability**

28   **will arise wholly or partly by reason of the conduct of Project One Parties.**

26

1    **141.     Project One Parties failed to use reasonable care and was actively negligent in**

2    **performing work under its agreement to construct the dry cleaners pursuant to the lease of**

3    **the Property to Ms. Heim.  That failure was a substantial factor in causing the release of**

4    **hazardous materials during the term of the lease and afterward that is at issue in the subject**

5    **action.**

6    **142.     Ms. Heim is entitled to a judicial determination of her rights, indemnification**

7    **and contribution, any declaration that Project One Parties, and not Ms. Heim, are liable for**

8    **all of the costs incurred, and to be incurred to remove, clean-up and remediate the alleged**

9    **hazardous substance contamination of the soil and groundwater in and around the**

10   **Property.**

11                          **FIFTEENTH CLAIM**

12          **(NEGLIGENT MISREPRESENTATION/FRAUD IN THE INDUCEMENT)**

13                        **(The Project One Parties)**

14   **143.     Third-Party Complainant realleges and incorporates by reference the**

15   **allegations contained in Paragraphs 1 through 42 as though fully set forth herein.**

16   **144.     Third-Party Complainant is informed and believes, and thereon alleges that**

17   **Project One Parties represented that they were experienced developers and that they would**

18   **"construct at [their] sole cost the necessary building for a dry cleaning establishment."**

19   **145.     Third-Party Complainant is informed and believes, and thereon alleges that**

20   **Project One Parties represented also represented that the building would be specially suited**

21   **to be a dry cleaning establishment and the building could "be used for no other purpose**

22   **without substantial alteration."  These representations were untrue as Project One Parties**

23   **did not construct the building necessary for a dry cleaning establishment.**

24   **146.     Third-Party Complainant discovered in or about May of 2011 that Project**

25   **One Parties took no steps to construct the building necessary for a dry cleaning**

26   **establishment.  William Burgstrom admitted at that time that the Project One Parties took**

27   **no steps to determine what building requirements were necessary for a dry cleaners, hired**

28   **no architect for the project, hire no engineer for the project and took no steps to determine**

27

1    the sufficiency of the plans for the building.

2        **147.    Third-Party Complainant is informed and believes, and thereon alleges that**

3    **when Project One Parties made these representations they had no reasonable grounds for**

4    **believing the representations were true and/or knew that the representations were false.**

5    **Project One Parties took no steps to determine what building requirements were necessary**

6    **for a dry cleaners and alternatively used inadequate construction materials and building**

7    **techniques.  Project One Parties thereafter filed a notice of completion to commence the**

8    **term of the lease representing to Ms. Heim that they had constructed a building suited to be**

9    **a dry cleaners.**

10       **148.    Project One Parties intended that Ms. Heim rely on these representations in**

11   **executing the lease, begin utilizing the building as a dry cleaners and later purchase the**

12   **Property.**

13       **149.    Ms. Heim reasonably relied on Project One Parties representations that the**

14   **building was constructed specifically to be used as a dry cleaners, entered the lease, began**

15   **paying rent and ultimately purchase of the Property.**

16       **150.    As a result of relying on the representations by Project One Parties, Ms. Heim**

17   **utilized the building as a dry cleaners.  Because of the faulty and inadequate construction by**

18   **Project One Parties including the use of materials that were un-compatible with chemicals**

19   **used in dry cleaning facilities, the sewers and drains servicing the Property immediately**

20   **began to leak.  As a proximate result of the defects alleged herein the Third-Party**

21   **Defendants caused Third-Party Complainant's damages including, but not limited to,**

22   **response costs incurred and to be incurred in the future to properly respond to the alleged**

23   **PCE contamination in and around the Property, and related costs in making the Property**

24   **safe from contamination.  Such costs also include attorneys' fees and consultants' fees**

25   **incurred as a direct and proximate result of said conduct.**

26                        **PRAYER FOR RELIEF**

27       **WHEREFORE**, Third-Party claimant prays to this Court for the following relief:

28       1.    For recovery and contribution from Third-Party Defendants, and each of them, of

28

1   all response costs incurred, and to be incurred by Third-Party claimant, in response

2   to the alleged release of hazardous substances in, near, around and adjacent to the

3   Property according to proof at trial;

4   2.   For damages against Third-Party Defendants, jointly and severally, in an amount

5   equal to all response costs and all other costs incurred in investigating, removing,

6   cleaning up and remediating the alleged hazardous substance contamination in an

7   amount according to proof at trial;

8   3.   For compensatory damages according to proof including;

9   4.   For incidental and consequential damages according to proof;

10   5.   For prejudgment interest at the legal rate;

11   6.   For attorney's fees;

12   7.   For consultants' fees and costs;

13   8.   For a declaration that Third-Party Defendants are jointly and severally liable for

14   abating the nuisance on the Property;

15   **9.   For punitive damages against Project One Parties;**

16   10.   For recoverable costs; and

17   11.   For such other and further relief as this Court deems just and proper.

18

19   <u>**DEMAND FOR JURY TRIAL**</u>

20   Under Rule 38 of the Federal Rules of Civil Procedure, Third-Party claimant demands a

21   trial by jury on all issues so triable.

22

23   Dated: June 24, 2011                     GREBEN & ASSOCIATES

24

25                                           /s/ Jan A. Greben
                                            Jan A. Greben
26                                          Jeff G. Coyner
                                            Danielle De Smeth
27                                          Attorneys Defendants The Estate of Donald T. Heim
                                            and Maxine Heim

28

# EXHIBIT "C"

1  WILLIAM D. WICK (State Bar No. 063462)
       bwick@ww-envlaw.com
2  ANNA L. NGUYEN (State Bar. No. 226829)
       anguyen@ww-envlaw.com
3  WACTOR & WICK LLP
   180 Grand Avenue, Suite 950
4  Oakland CA 94612-3572
   Telephone:   (510) 465-5750
5  Facsimile:    (510) 465-5697

6  ALAN J. SMITH (State Bar No. 87770)
       Alan.Smith@grunskylaw.com
7  GRUNSKY, EBEY, FARRAR & HOWELL, P.C.
   240 Westgate Drive
8  Watsonville, CA 95076
   Telephone:   (831) 722-2444
9  Facsimile:    (831) 722-6153

10 Attorneys for Third-Party Plaintiff
   THE CITY OF WATSONVILLE
11

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT COURT OF CALIFORNIA

15

16 MARK HEIM,                           | Case No.  CV-10-03816
                Plaintiff,
17        v.                            | **THE CITY OF WATSONVILLE'S**
                                          **THIRD-PARTY COMPLAINT**
18 THE ESTATE OF DONALD T. HEIM, MAXINE   **AGAINST PROJECT ONE LIMITED**
   HEIM, and CITY OF WATSONVILLE,        **PARTNERSHIP, WILLIAM**
19                                        **BURGSTROM, AND THE ESTATE**
                Defendants.               **OF ERNIE WEBB**
20 CITY OF WATSONVILLE,

21             Third-Party Plaintiff,    | **DEMAND FOR JURY TRIAL**

22        v.

23 WILLIAM BURGSTROM; THE ESTATE OF
   ERNIE WEBB, PROJECT ONE, a limited
24 partnership; and ROES 1-20, Inclusive

25             Third-Party Defendants.

26 AND RELATED COUNTERCLAIMS AND
   CROSSCLAIMS
27

28

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-1-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

Pursuant to Rule 14 of the Federal Rules of Civil Procedure, Third-Party Plaintiff City of Watsonville ("the City" or "Third-Party Plaintiff") hereby brings these claims against Third-Party Defendants William Burgstrom, the Estate of Ernie Webb, and Project One (collectively, "Third-Party Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      This action primarily arises under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.  This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 2201 et seq., 42 U.S.C. §§ 9607, 9613 and Federal Rule of Civil Procedure 57. This Court has supplemental jurisdiction over the state claims asserted in this action pursuant to 28 U.S.C. § 1367. The federal and state claims alleged herein are based on the same set of operative facts. Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state claims.

2.      Venue is proper under the provisions of 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 9613, 6972(a) because the claims stated herein arose in this district in Santa Cruz County.

## PARTIES

3.      Plaintiff Mark Heim is an individual doing business in the State of California, County of Santa Cruz, and owns the real property at issue in this action at 1350 Freedom Boulevard, Watsonville, California "the Property."  He also has owned and operated, and owns and operates, a dry cleaning facility on the Property.

4.      Defendant Maxine Heim is an individual and resident of the State of Arizona who formerly owned the Property and who formerly owned and operated a dry cleaning facility on the Property.

5.      Defendant and Third-Party Plaintiff The City of Watsonville is a Charter City in the County of Santa Cruz, in the State of California.

6.      Third-Party Defendant Project One Limited Partnership ("Project One") is a California Limited Partnership, which at all times relevant herein was doing business in the State of California, County of Santa Cruz.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-2-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

7.    Third-Party Defendant William Burgstrom is an individual doing business in the State of California and a general partner of Project One.

8.    Third-Party Defendant the Estate of Ernie Webb is the estate of Ernie Webb, who was an individual doing business in the State of California and a general partner of Project One.

9.    The true names and capacities, whether individual, corporate, associate or otherwise, of Third-Party Defendants identified herein as ROES 1-20, inclusive, are unknown to Third-Party Plaintiff, who therefore sue said Third-Party Defendants by such fictitious names. Third-Party Plaintiff alleges that each of the Third-Party Defendants designated herein is legally responsible in some manner either by way of their ownership or operation/control of the Property for the events and happenings herein referred to and proximately caused injury and damages to Cross- Complainant as herein alleged. Each such ROE Third-Party Defendant was the agent, employee of, or acting under the direction of all other Defendants and/or Third-Party Defendants and in doing the things alleged was acting within the scope and purpose of said agency and/or employment.

## NATURE OF THE ACTION

10.  On August 26, 2010, Plaintiff Mark Heim ("Plaintiff"), the current owner and operator of the Property and the dry cleaner facility located on the Property, filed a complaint against the Estate of Donald T. Heim and Maxine Heim ("Heim Defendants") and the City of Watsonville ("the City") seeking damages and injunctive relief arising out of alleged soil and groundwater contamination of the Property ("the Complaint"). Without admitting the truth of any of the allegations contained in the Complaint, Third-Party Plaintiff incorporates them by reference.

11.  On April 25, 2011, Maxine Heim filed amended counterclaims against Plaintiff and the City as well as a third-party complaint against dry cleaning equipment manufacturers, Multimatic LLC, Multimatic Corporation and the Kirrberg Corporation (collectively, "Multimatic Entities"). Without admitting the truth of any of the allegations contained in Maxine Heim's amended counterclaims and third-party complaint, Third-Party Plaintiff incorporates them by reference.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-3-
THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

12.   On or about December 6, 2010, the City answered Plaintiff's Complaint and asserted Counterclaims against Plaintiff and Maxine Heim alleging that Plaintiff and Ms. Heim were liable for the releases of hazardous substances at and emanating from the Property; on May 16, 2011, the City answered Maxine Heim's First Amended Counterclaims. alleging that Ms. Heim was liable for the releases of hazardous substances at and emanating from the Property.  The City incorporates by reference its Answers and Counterclaims.  The City denies any liability, but if the City is adjudged to be liable to Plaintiff or Counter-Complainant Heim or any party, then Third-Party Defendants, and each of them, (and others, including Plaintiff and Defendant Maxine Heim) are responsible for the Plaintiff's injuries and damages.

## **GENERAL ALLEGATIONS**

13.   The City is informed and believes, and on that basis alleges, that Plaintiff Mark Heim has owned the Property continuously since June 1996, and that he has owned and operated a dry cleaning business at the Property since January 1994.

14.   The City is informed and believes, and on that basis alleges, that William Burgstrom and Ernie Webb were at all relevant times general partners of Project One and are therefore jointly and severally liable for liabilities of the partnership.

15.   The City is informed and believes, and on that basis alleges, that Third-Party Defendants, as owners of the Property, executed a lease in or about February of 1970 with Donald and Maxine Heim in which they agreed as consideration for the lease "to construct at its sole cost the necessary building for a dry cleaning establishment," including the floor drains, drain pipes and sewer laterals, and connections thereto, and to file a notice of completion after the construction was completed which would commence the term of the lease.

16.   The City is informed and believes, and on that basis alleges, that after completion of the construction of the dry cleaners, Third-Party Defendants filed a notice of completion in or about May of 1970.

17.   The City is informed and believes, and on that basis alleges, that Third-Party Defendants sold the Property to Maxine and Donald Heim in 1972.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-4-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

18.     The City is informed and believes, and on that basis alleges, Maxine and her husband, Donald Heim, operated a dry cleaning business at the Property from approximately May of 1970 to January of 1994.

19.     The City is informed and believes, and on that basis alleges, that as the developers of the dry cleaning establishment and owners of the Property, Third-Party Defendants were responsible for the condition of the Property and constructed the sewer laterals and floor drains servicing the dry cleaners prior to commencement of the lease with the knowledge and intent that hazardous substances used in dry cleaning, including the dry cleaning solvent tetrachloroethylene ("PCE"), would be placed into the sewers. The City is informed and believes, and on that basis alleges, that the defects in the floor drains, drain pipes and sewer laterals and connections thereto caused hazardous substances, including PCE, to escape into the environment.

20.     The City is informed and believes, and on that basis alleges, that PCE has been detected in the soil, groundwater on, beneath, and in the vicinity of the Property.

21.     The City is informed and believes, and on that basis alleges, that Third-Party Defendants, during a period of the time relevant herein, owned and controlled the Property, were the owners of the Property at the time of release or releases of hazardous substances into the environment, were in sufficient control of the Property as owners and landlords to have known of the dry cleaning operations and use of hazardous substances on the Property, and had the legal ability to prevent, minimize, mitigate, clean up, abate, investigate and/or otherwise respond to any release or discharge.

22.     The City is informed and believes, and on that basis alleges, that during their respective period of business operations and/or ownership on the Property, Third-Party Defendants used, handled, and stored various hazardous substances, including but not limited to PCE, and that Third-Party Defendants have generated, released, and known about the release of various solid and hazardous wastes onto the Property during the course of their business activities on the Property.

23.     The City is informed and believes, and on that basis alleges, that Third-Party Defendants failed to comply with minimum commercial, professional and regulatory standards

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-5-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

1   and maintain the equipment (and the premises and fixtures and appurtenances thereto) to minimize

2   or prevent leaks or spills of PCE or other hazardous substances on the Property.

3        24.    The City is informed and believes, and on that basis alleges, that Third Party

4   Defendants were, at all relevant times, in sufficient control of the plumbing and drains connected

5   to the operations on the Property and the sewer laterals on the Property, and knew or should have

6   known that their construction and maintenance of the floor drains, drain pipes, sewer laterals and

7   connections thereto would cause the contamination described herein and that defects in the sewer

8   laterals and drains resulted in the release of hazardous substances, including PCE, into the

9   environment during Third-Party Defendants' ownership of the Property.

10        25.    The City is informed and believes, and on that basis alleges, that as a result of

11   Third-Party Defendants' acts and/or omissions (including their failure to design, construct,

12   maintain and operate the floor drains, drain pipes and sewer laterals and connections thereto in a

13   safe manner to prevent the exfiltration of hazardous substances, including PCE, from the sewer

14   laterals on the Property), hazardous substances were generated, released, and discharged into the

15   soil, water, and environment, and have migrated into the surrounding area, and have proximately

16   caused the City's damages.

17        *26.*    An actual controversy has arisen and now exists between the City and Third-Party

18   Defendants in that the City contends, and Third-Party Defendants deny, that: (a) as between the

19   City and Third-Party Defendants, responsibility, if any, for the damages rests entirely with Third-

20   Party Defendants; (b) the City is innocent of responsibility and did not cause or contribute to the

21   contamination at the Property; and (c) as a result, Third-Party Defendants are obligated to fully

22   indemnify or reimburse the City for any sums that the City has expended in response costs and in

23   prosecuting this action and defending against third party claims for investigation and cleanup of

24   the Property, including but not limited to any amount the City may pay due to any costs, damages,

25   judgments, or other award recovered against it by any parties related to the contamination caused

26   by Third-Party Defendants.

27        27.    As a result of  the above-described acts and omissions of Third-Party Defendants,

28   the City has and will be damaged in an amount which will be proven at trial as follows:

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-6-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

(a) The City will incur substantial expenses and response costs, in an exact amount to be proven at trial, including consultants' and attorneys' fees associated with investigating, monitoring, assessing and evaluating soil and groundwater contamination on, under, and around the Property;

(b) The City has incurred and will continue to incur response costs, attorneys' fees, costs and expenses in prosecuting this action and defending against related counterclaims and crossclaims in this action; and

(c) The City may be required to defend future actions and administrative proceedings arising directly or indirectly from each Third-Party Defendants' contamination of the Property.

## FIRST CAUSE OF ACTION

*(Cost Recovery under CERCLA –Against All Third-Party Defendants)*

28.     The City realleges paragraphs 1 through 27 and incorporates them by reference.

29.     CERCLA Section 107(a), 42 U.S.C. § 9607(a), provides as follows:

> (2) any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of, [or]

> (3) any person who . . . arranged for disposal or treatment . . of hazardous substances . . . at any facility [or]

> (4) any person who accepts or accepted any hazardous substances for transport to … sites selected by such person, from which there is a release or a threatened release, which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
> (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan. . . .

30.     A "release" of hazardous substances within the meaning of CERCLA Section 101(22), 42 U.S.C. § 9601(22), occurred at the Property.

31.     Chemicals released at the Property by Third-Party Defendants, including but not limited to PCE,  are "hazardous substances" within the meaning of CERCLA Section 101(14), 42 U.S.C. §9601(14).

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-7-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

32.     The Property and the sewer drains and sewer laterals at and under the Property are each a "facility" within the meaning of CERCLA Section 101(9), 42 U.S.C. § 9601(9),

33.     Each Third-Party Defendant is a "person" as defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

34.     As a result of the release of hazardous substances, the City has incurred and will incur response costs within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25), consistent with the National Contingency Plan.

35.     Each Third-Party Defendant is liable under CERCLA § 107(a)(2), (3) and (4), 42 U.S.C. § 9607(a)(2),(3) and (4) as the owner of the Property at the time of disposal of hazardous substances;  as the operator of the Property at the time of disposal of hazardous substances;  as a person who arranged for the disposal of CERCLA hazardous substances; and as a person who accepted hazardous substances for transport to sites selected by such person.  Each Third-Party Defendant therefore is a "covered person," liable for any and all costs, damages, and other relief under 42 U.S.C. § 9607(a).

36.     The City has incurred, and will continue to incur, necessary response costs consistent with the National Contingency Plan as a result of the release of hazardous substances caused by Third-Party Defendants.

37.     The City requests that judgment be entered in favor of The City and against Third-Party Defendants pursuant to 42 U.S.C. § 9607(a) for all response costs incurred by any person with regard to the hazardous substances released at the Property.

## SECOND CAUSE OF ACTION

*(Contribution under CERCLA–Against All Third-Party Defendants)*

38.     The City realleges paragraphs 1 through 37 and incorporates them by reference.

39.     The complaint filed by Plaintiff and Counter-Complaint filed by Ms. Heim each constitutes a civil action within the meaning of 42 U.S.C. § 9613(f)(1).

40.     If the City is liable under CERCLA, then the City is entitled to contribution under 42 U.S.C. § 9613 from Third-Party Defendants.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-8-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

**THIRD CAUSE OF ACTION**

*(Declaratory Judgment under CERCLA –Against All Third-Party Defendants)*

41.     The City realleges paragraphs 1 through 40, and incorporates them by reference.

42.     CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), provides that in an action to recover costs, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

43.     The City desires a determination of the respective rights, duties, and liabilities of the City and Third-Party Defendants for past and future response costs and damages associated with Third-Party Defendants' pollution.  The City is entitled to declaratory relief under 42 U.S.C. Sections 9607 and 9613 that establishes Third-Party Defendants' liability for such response costs for the purposes of this and any subsequent action or actions to recover further response costs. Accordingly, the City requests that the Court enter a judgment in favor of the City and against Third-Party Defendants as set forth herein.

**FOURTH CAUSE OF ACTION**

*(Contribution under Hazardous Substance Account Act – Against All Third-Party Defendants)*

44.     The City realleges and incorporates by reference the allegations of paragraphs 1 through 43 above.

45.     The California Hazardous Substance Account Act ("HSAA") codified at California Health & Safety Code §§ 25300 through 25395.45, states, in relevant part, at § 25363(e):

> Any person who has incurred removal or remedial action costs in accordance with this chapter or the federal act [defined as the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. §§9601, *et seq*.)] may seek contribution or indemnity from any person who is liable pursuant to this chapter…

46.     The City is a "person" who has incurred or will incur removal and remedial action costs in accordance with Chapter 6.8 of the HSAA, within the meaning of HSAA § 25319.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-9-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

47.     Each Third-Party Defendant is a "person who is liable" for removal and remedial action costs incurred by The City within the meaning of HSAA §§ 25319 and 25323.5.

48.     The contaminants released or discharged at the Property, including but not limited to PCE, are "hazardous substances" within the meaning of HSAA § 25316.

49.     The Property is a "site" within the meaning of HSAA § 25323.9.

50.     The costs incurred by The City to investigate and remediate hazardous substances at the Property have been incurred for "removal" or "remedial" actions within the meaning of HSAA §§ 25322 and 25323.

51.     All removal and remedial costs incurred, and to be incurred, by The City at the Property are necessary costs of response that are consistent with HSAA § 25356.1.

52.     The City has given or will give written notice of this action to the Director of the California Department of Toxic Substances Control pursuant to HSAA § 25363(e).

53.     Each Third-Party Defendant is liable under the HSAA as the owner of the Property at the time of disposal of hazardous substances; as the operator of the Property at the time of disposal of hazardous substances; as a person who arranged for the disposal of CERCLA hazardous substances; and as a person who accepted hazardous substances for transport to sites selected by such person (and such liability has not previously been discharged pursuant to any state apportionment proceeding).  The City is entitled to indemnification and contribution from Third-Party Defendants pursuant to the HSAA.


## FIFTH CAUSE OF ACTION

*(HSAA Declaratory Relief – Against All Third Party Defendants)*

54.     The City realleges and incorporates by reference the allegations of the foregoing paragraphs 1 through 53 as if fully set forth herein.

55.     The City has incurred and will incur costs in connection with its investigation of contamination on the Property in accordance with the HSAA, California Health & Safety Code §25300, et seq.

56.     An actual controversy has arisen and now exists among the City and Third-Party

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-10-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

Defendants in that the City contends, and Third-Party Defendants deny, that Third-Party Defendant is liable under the HSAA for the costs incurred and to be incurred by the City to investigate, remove or remediate hazardous substances at the Property.

57.     Because the extent and magnitude of the contamination of the Property is not fully known at this time and the contamination has not been fully mitigated, the City will incur necessary response costs under the HSAA in the future.

58.     Pursuant to California Health and Safety Code § 25363, the City is entitled to a declaratory judgment establishing Third-Party Defendants' liability for such response costs for the purposes of this and any subsequent action or actions to recover further response costs.

## SIXTH CAUSE OF ACTION

*(Contribution – Against All Third Party Defendants)*

59.     The City incorporates the allegations of paragraphs 1 through 58, inclusive, of these causes of action by this reference as though fully set forth herein.

60.     Under Section 1432 of the California Civil Code (which provides in pertinent part, "a party to ... a joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him"), and under general equitable principles and rules governing this action, the City is entitled to contribution from Third-Party Defendants for their share of the response costs and damages paid and to be paid by the City.

61.     If liability should be established on the part of the City, which liability the City expressly denies, the City is informed and believes and thereupon alleges that it may be obligated to pay sums for which it is not liable, but for which Third-Party Defendants are liable.  The City therefore requests contribution and indemnification against Third-Party Defendants jointly and severally pursuant to common law and California Civil Code Section 1432.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-11-
THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

**SEVENTH CAUSE OF ACTION**

*(Equitable Indemnity – Against All Third-Party Defendants)*

62.     The City realleges and incorporates the allegations of paragraphs 1 through 61, inclusive, of these causes of action by this reference as though fully set forth herein.

63.     The City never used PCE or any other hazardous substances at the Property, and never stored, sold, or used PCE or other hazardous substances at the Property.

64.     Third-Party Defendants, through their acts and/or omissions, have discharged and released hazardous substances at the Property.

65.     The City is informed and believes, and upon such basis alleges, that the environmental contamination at the Property relates to activities of Third-Party Defendants and that Third-Party Defendants are responsible as a matter of equity.

66.     The City has necessarily retained legal counsel to defend the City at the City's sole cost and expense and to prepare, file, and prosecute this third-party complaint as set forth herein. The City has incurred, and will continue to incur, response and defense costs relating to hazardous substances on the Property.

67.     The City's costs have been necessary to address contamination proximately caused by the acts and/or omissions of Third-Party Defendants.

68.     The City's costs have been and will be incurred because of Cross- Defendants' refusal to satisfy their legal obligations.

**69.**     The City is entitled to equitable indemnity from Third-Party Defendants for all costs incurred, and to be incurred, by the City, including attorneys' fees, in connection with the contamination at and emanating from the Property.

**EIGHTH CAUSE OF ACTION**

*(Negligence – Against All Third-Party Defendants)*

70.     The City realleges and incorporates the allegations of paragraphs 1 through 69, inclusive, of these causes of action by this reference as though fully set forth herein.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-12-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

71.     Third-Party Defendants had a duty of care with respect to their actions at and upon the Property.

72.     The City is informed and believes, and on that basis alleges, that Third-Party Defendants breached their duty of care in connection with their operation of or activities at the Property by virtue of their actions and/or omissions as alleged herein.

73.     The City is informed and believes, and thereon alleges, that during Third-Party Defendants' ownership and/or operation of a dry cleaner on the Property, releases of PCE have occurred, resulting in contamination at the Property and that the releases are attributable to Third-Party Defendants' negligence.

74.     Said breaches of duty by Third-Party Defendants proximately caused the release or threatened release of hazardous substances at the Property.  The City has incurred costs in responding to that release or threatened release and expects to incur additional costs in the future as a result of said negligence on the part of Third-Party Defendants.

75.     Consequently, the City is entitled to damages according to proof at trial.

**NINTH CAUSE OF ACTION**

*(Negligence Per Se – Against All Third Party Defendants)*

76.     The City realleges and incorporates the allegations of paragraphs 1 through 75, inclusive, of these causes of action by this reference as though fully set forth herein.

77.     The City is informed and believes, and on that basis alleges, that Third-Party Defendants' conduct leading to the release or threatened release of hazardous substances at the Property violated applicable legal requirements governing the transport, handling, storage, treatment, use and disposal of hazardous substances.  Such release or threatened release is the type of occurrence which the aforementioned legal requirements are designed to prevent.

78.     The City is informed and believes, and on that basis alleges, that Third-Party Defendants had knowledge or reasonable cause to believe that a release or threatened release of a hazardous substance has come or will come to be located on or beneath the Property in amounts required to be reported to a state or local agency pursuant to law, and Third-Party Defendants

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-13-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

1    knowingly and willfully did not give the City timely and adequate written notice, if any, of the

2    release or threatened release of that condition to the City.

3        79.    The City is among the class of persons which such legal requirements were

4    designed and intended to protect.

5        80.    The violations by Third-Party Defendants of those legal requirements proximately

6    caused harm to the City, which has been required to respond to said releases and threatened

7    releases of hazardous substances at the Property, and which will be required to continue to respond

8    to them in the foreseeable future.  As a result of Third-Party Defendants' acts and/or omissions,

9    the City is entitled to damages according to proof at trial.

10        81.    The foregoing acts and omissions of Third-Party Defendants violate various

11    statutory provisions, including but not limited to, California Civil Code Section 3281-3282;

12    California Health and Safety Code Section 5411, et seq; California Health and Safety Code §§

13    25359, et. seq.; California Health and Safety Code §§ 25249.5 et seq.; California Health and

14    Safety Code §§ 25100 et seq.; California Health and Safety Code §§ 25189(c)-(d); California

15    Water Code §§ 13000 et. seq.; and Fish & Game Code §§ 5650, et. seq., which provide a standard

16    of care and duty of care by which Third-Party Defendants are held.

17        82.    Third-Party Defendants failed to comply with the state law as detailed above and

18    therefore breached said duties of care.

19        83.    The City has sustained injury as a result of Third-Party Defendants' negligent

20    conduct, including investigative costs, attorney's fees, and other costs, as described herein.  As a

21    further direct and proximate cause of the negligence per se by Third-Party Defendants, the City

22    has suffered damages as previously described herein, including other consequential, incidental,

23    and general damages to be proven at trial.

24

25                          **TENTH CAUSE OF ACTION**

26                   *(Continuing Nuisance – Against All Third Party Defendants)*

27        84.    The City realleges and incorporates the allegations of paragraphs 1 through 83,

28    inclusive, of these causes of action by this reference as though fully set forth herein.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-14-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

85.     Third-Party Defendants' acts and/or omissions have resulted in conditions that are injurious to health, offensive to the senses, and an interference with the free use of property so as to interfere with the comfortable enjoyment of life and property.  The conditions caused by Third-Party Defendants constitute a nuisance within the meaning of California Civil Code § 3479.

86.     The City is informed and believes, and on that basis alleges, that the nuisance is continuing because, it is ongoing and can be abated.

87.     As a direct and proximate result of the nuisance caused by Third-Party Defendants, the City has been damaged as alleged herein and prays for relief and damages as set forth below.

## ELEVENTTH CAUSE OF ACTION

*(Continuing Public Nuisance – Against All Third Party Defendants)*

88.     The City realleges and incorporates the allegations of paragraphs 1 through 87, inclusive, of these causes of action by this reference as though fully set forth herein.

89.     The nuisance caused by Third-Party Defendants is a public nuisance because it affects an entire neighborhood and a considerable number of persons within the meaning of California Civil Code § 3480.

90.     The City has standing to bring this action to abate the public nuisance because it has been specially injurious to the City within the meaning of California Civil Code § 3495.

91.     The public nuisance is continuing because, among other things, it is ongoing and can be abated.

92.     As a direct and proximate result of the public nuisance caused by Third-Party Defendants, the City has been damaged as alleged herein.  In accordance with California Code of Civil Procedure § 731, the City is entitled to damages as well as injunctive relief requiring Third-Party Defendants to abate the continuing public nuisance.

93.     The City is informed and believes, and on that basis alleges that Third-Party Defendants acted with oppression, fraud or malice, and in wanton disregard of the health and safety of those impacted by its public nuisance, including The City.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-15-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

94.     As a result of the public nuisance, the City prays for injunctive relief and damages as set forth below.

**TWELFTH CAUSE OF ACTION**

*(Public Nuisance Per Se – Against All Third Party Defendants)*

95.     The City realleges and incorporates the allegations of paragraphs 1 through 94, inclusive, of these causes of action by this reference as though fully set forth herein.

96.     Third-Party Defendants' acts and/or omissions have caused a nuisance within the meaning of California Water Code Section 13050(m), 13304, 13350, 13387, and California Health and Safety Code sections 5411, 5411.5, and 1177555, and Section 3479 of California Civil Code.

97.     Third-Party Defendants have failed to comply with the state law as detailed above. The City has sustained special injury as a result of this nuisance, including investigative costs, attorney's fees, and other costs, as described herein.  As a further direct and proximate cause of the nuisance created by Third-Party Defendants, the City has suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial.

98.     The City seeks abatement of the nuisance, injunctive relief, and all other legally available costs and damages as set forth below.

**THIRTEENTH CAUSE OF ACTION**

*(Waste)*

99.     The City realleges and incorporates by reference the allegations contained in Paragraphs 1 through 98 as though fully set forth herein.

**WACTOR & WICK LLP**
180 Grand Avenue, Suite 950
Oakland, CA 94612

-16-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

100.    The City is informed and believes, and on that basis alleges, that Third-Party Defendants committed waste at and upon the Property by contaminating the Property with hazardous substances and not remediating the contamination.

101.    As a direct and proximate result of the above waste committed by Third-Party Defendants, the City has been damaged in an amount to be proven at trial, until said waste can be fully and remediated from the Property.

**FOURTEENTH CAUSE OF ACTION**

*(Contribution under Water Code – Against All Third Party Defendants)*

102.    The City realleges and incorporates the allegations of paragraphs 1 through 101, inclusive, of these causes of action by this reference as though fully set forth herein.

103.    The Porter-Cologne Act provides for statutory contribution for those persons who become liable for investigation and cleanup of hazardous substance contamination to groundwater. To the extent the City incurs costs and expenses in response to the hazardous substance contamination of the soil and groundwater in and around the Property, the City is statutorily entitled to contribution from Third-Party Defendants pursuant to Water Code Section 13350(j).

**FIFTEENTH CAUSE OF ACTION**

*(Declaratory Relief Under State Law – Against All Third Party Defendants)*

104.    The City realleges and incorporates the allegations of paragraphs 1 through 103, inclusive, of these causes of action by this reference as though fully set forth herein.

105.    An actual controversy exists between the City and Third-Party Defendants with respect to their respective rights and obligations under state law.  The City seeks a judicial determination of the respective rights and duties of the parties with respect to the rights, claims and damages alleged herein.

106.    The City further seeks a declaration that Third-Party Defendants and/or others, and not the City, are responsible for the contamination and therefore are liable for all the costs

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-17-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

incurred, and to be incurred to remove, clean-up and remediate the contamination of the soil and groundwater at, in, or emanating from the Property.  The requested declaration is necessary and appropriate at this time to allow the City to ascertain their rights and duties with respect to the claims at issue in this action.

107.   As a result, the City prays for declaratory relief as set forth below.

## **PRAYER FOR RELIEF**

The City prays for judgment against Third-Party Defendants as follows:

1.   For mandatory, preliminary and permanent injunction ordering Third-Party Defendants to take all necessary actions to investigate, abate, and clean up the contamination at or emanating from the Property, and to comply, at their own expense, with any and all regulatory agencies' demands regarding the contamination;

2.   For recovery of all response costs, including but not limited to costs of services provided by attorneys, consultants, and experts to the extent provided for by law, incurred to date and to be incurred;

3.   For contribution from Third-Party Defendants for any and all response costs, including those that may be incurred by the City in the future;

4.   For indemnification by Third-Party Defendants, for all costs, damages, expenses or claims resulting from claims related to the contamination on, at, or near the Property;

5.   For a declaration that Third-Party Defendants are jointly and severally liable for abating the nuisance on the Property and for damages in the amount equal to all response costs and all other costs incurred in investigating, removing, cleaning up and remediating the alleged hazardous substance contamination in an amount according to proof at trial;

6.   For a declaration that Third-Party Defendants are obligated to indemnify the City from and against any and all claims arising out of contamination at the Property;

7.   For an order directing that Third-Party Defendants conduct a comprehensive investigation and study to determine the characteristics of the waste and to clean up the extent of the contamination;

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-18-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

8.      For damages according to proof at trial, including but not limited to all costs and expenses paid and to be paid in complying with regulatory agency's directives relating to investigation and cleanup of the Property;

9.      For an award of the costs of this litigation, including but not limited to costs that the City has incurred and continue to incur to defend themselves against third-party claims relating to the investigation and cleanup of site contamination on the Property, reasonable attorneys' fees and experts' fees, and costs and expenses to monitor Defendants' compliance with any orders or judgments issued by this Court;

10.     For any award of damages, in amount according to proof at trial, consisting of the costs, fees, and other expenses authorized under California Code of Civil Procedure section 1021.5 and 1021.6 as well as consultants' fees and costs;

11.     For any and all remedies authorized under various statutory provisions, including but not limited to, California Civil Code Section 3281-3282; California Health and Safety Code Section 5411, et seq; California Health and Safety Code §§ 25359, et. seq.; California Health and Safety Code §§ 25249.5 et seq.; California Health and Safety Code §§ 25100 et seq.; California Health and Safety Code §§ 25189(c)-(d); California Water Code §§ 13000 et. seq.; and Fish & Game Code §§ 5650, et. seq.;

12.     For entry of a declaratory judgment against Third-Party Defendants and in favor of the City according to proof at trial;

13.     For compensatory, incidental, and consequential damages according to proof;

14.     For prejudgment interest at the maximum rate permitted by law;

15.     For such other and further relief as the Court may deem appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, The City hereby demands a trial by jury of all issues triable by jury.

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-19-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --

1 | Dated:  June 24, 2011                              WACTOR & WICK LLP

2

3                                                 By:  _____/s/ William D. Wick_____
                                                        WILLIAM D. WICK
4                                                       Attorneys for Third-Party Plaintiff
                                                        THE CITY OF WATSONVILLE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WACTOR & WICK LLP
180 Grand Avenue, Suite 950
Oakland, CA 94612

-20-

THE CITY OF WATSONVILLE'S THIRD-PARTY COMPLAINT AGAINST PROJECT ONE, WILLIAM
BURGSTROM, AND THE ESTATE OF ERNIE WEBB -- Case No. CV10-03816 --