**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK HEIM,<br><br>       Plaintiff,<br><br> v.<br><br>THE ESTATE OF DONALD T. HEIM, et al.,<br><br>       Defendants.<br>——————————————————<br>AND RELATED COUNTER, THIRD PARTY,<br>AND CROSS CLAIMS<br>—————————————————— | Case No.: 5:10-CV-03816-EJD<br><br>**ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br><br>**[Re: Docket No. 192, 201]** |

## I.    Background

     The Heim family commenced this Action against a number of defendants seeking contribution for contamination at 1350 Freedom Blvd, Watsonville California ("the Property") from chlorinated solvents, including Perchloroethylene ("PCE").  Third-Party Plaintiff Maxine Heim ("Third-Party Plaintiff") and her now deceased husband owned and operated a dry cleaning business at the Property from approximately 1970 to 1996.  As part of the dry cleaning operations, PCE was used.  In June of 1996, Third-Party Plaintiff sold the property to Mark Heim, who has continuously owned the Property and has operated a dry cleaning business ever since.  The dumping of PCE down the drain and into the sewer caused soil and groundwater contamination at

and surrounding the Property.  PCE erodes materials commonly used to build sewer pipes.  PCE is toxic by inhalation, by prolonged or repeated contact with the skin or mucous membranes, or when ingested.  Exhibit D, PR0004, Docket Item No. 214.  Vapor inhalation can cause narcosis, anesthesia, or irritation of the eyes, nose and skin.  Id.  Excessive exposure to PCE can cause Jaundice and biochemical changes indicative of liver injury and can sensitize the heart making it predisposed to the development of serious or even fatal rhythm disturbances.  Id.  The Regional Water Quality Control Board named Maxine Heim a responsible party for environmental cleanup at the Property.  Third Amended Complaint ("TAC") ¶ 13, Docket Item No. 141.  As a result, she has incurred related cleanup costs.  Id.

Third-Party Plaintiff  filed a third party complaint against Multimatic LLC and the Kirrberg Corporation, formerly known as Multimatic Corporation (together referred to herein as "Multimatic Parties") and American Laundry Machinery, Inc. ("ALMI") under federal claims pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (Claims 1 and 2), and under state law claims for Negligence and Negligence Per Se (Claims 4 and 5), Nuisance (Claims 9 and 10), Common Law Contribution, Indemnity, and Porter-Cologne Contribution (Claims 6, 7, 8, and 11), California Health & Safety Code §25300 (Claim 3), Strict Products Liability (Claim 13), and Declaratory Relief (Claim 12).  TAC ¶ 61-130, Dkt. No. 141.  Third-Party Plaintiff dismissed her Fourth, Fifth and Thirteenth claims voluntarily.  Plaintiff's Response at 22, Docket Item No. 214.  Multimatic sold the dry cleaning equipment that Third-Party Plaintiff used for the dry cleaning business.  ALMI designed, manufactured and sold equipment used at the Property, namely the Ajax Model 218 Vapor Adsorption Unit, Serial # 21821760784 ("Ajax") that Third-Party Plaintiff used for the dry cleaning business from 1983 to 1994.  TAC ¶ 58, Dkt. No. 141.  According to Third-Party Plaintiff, the "sole purpose" of the Ajax was to catch and process PCE vapor fumes, the primary chemical at issue in this case and one typically used by dry cleaners, created by other dry cleaning machines.  Pl.'s Resp. at 1, Dkt. No. 214.

United States District Court
For the Northern District of California

2

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

On or about July 9, 2013, Multimatic Parties, Third-Party Plaintiff and Mark Heim individually and on behalf of the Estate of Donald T. Heim, (collectively referred herein as "Settling Parties"), participated in mediation with mediator Timothy Gallagher, Esq.  Def.'s Mot. for Determination of Good Faith Settlement ("MDGFS") at 2, Docket Item No. 192.  After a full day of mediation, Settling Parties agreed to settle the matter for a total sum of $450,000.  Declaration of Thomas Vandenburg ("Vandenburg Decl.") ¶ 7, Docket Item No. 158.  In exchange for payment, the Plaintiffs are to release all claims against Multimatic Parties arising from or related to claims asserted in this Action, and all claims related to the alleged contamination of the Property.  MDGFS at 3, Dkt. No. 192.  Settling Parties also agree to bear their respective costs and fees incurred during the course of litigation.  Vandenburg Decl., Ex. A.  In a motion filed November 6, 2013, the Multimatic Parties request the court approve the settlement.

ALMI filed a Motion for Summary Judgment, or in the alternative, a partial Summary Judgment to Plaintiff's Third Amended Third Party Complaint.  ALMI also filed an Opposition Motion to the Good Faith Settlement Agreement between Settling Parties.

## II.     Legal Standard

### a.   Motion for Summary Judgment - Rule 56(b)

A party moving for summary judgment has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Rule 56 does not require that the relief granted to a successful movant always be dispositive of the full matter in controversy.  Rule 56(b) provides that "[a] party against whom relief is sought may move at any time ... for a summary on all or part of the claim." Fed. R. Civ. P. 56(b).  See, e.g., First Nat. Ins. Co. v. F.D.I.C., 977 F. Supp. 1051, 1055 (S.D. Cal 1997) ("[T]he Court may

3

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

1   still grant summary adjudication as to specific issues if it will narrow the issues for trial."); <u>Baker</u>

2   <u>v. Norman</u>, 651 F.2d 1107, 1123 (5th Cir. 1981) ("In cases that involve complicated fact patterns

3   and multiple causes of action, summary judgment may be proper as to some causes of action but

4   not as to others, or as to some issues but not as to others, or as to some parties but not as to

5   others[.]").

6          As discussed below, Third-Party Plaintiff fails to raise sufficient factual issues to defeat

7   summary judgment.

8          **b.  Cost Recovery Pursuant to CERCLA §§113(f) & 107(a)**

9          Congress passed the Comprehensive Environmental Response, Compensation, and Liability

10  Act (CERCLA) in 1980 "in response to the serious environmental and health risks posed by

11  industrial pollution." <u>Burlington N. & Santa Fe Ry. Co. v. United States</u>, 556 U.S. 599, 602

12  (2009). CERCLA was "designed to promote the timely cleanup of hazardous waste sites and to

13  ensure that the costs of such cleanup efforts were borne by those responsible for the

14  contamination." <u>Id.</u> (internal quotation marks and citation omitted). CERCLA imposes strict

15  liability for environmental contamination upon four broad classes of covered persons: (1) the

16  owner and operator of a vessel or a facility, (2) any person who at the time of disposal of any

17  hazardous substance owned or operated any facility at which such hazardous substances were

18  disposed of, (3) any person who arranged for disposal or treatment or arranged with a transporter

19  for transport for disposal or treatment of hazardous substances owned or possessed by such person,

20  and (4) any person who accepts or accepted any hazardous substances for transport to disposal or

21  treatment facilities, incineration vessels or sites selected by such person, from which there is a

22  release, or a threatened release which causes the incurrence of response costs, of a hazardous

23  substance. 42 U.S.C. § 9607(a). Once identified as a covered person, "an entity . . . may be

24  compelled to clean up a contaminated area or reimburse the Government for past and future

25  response costs." 42 U.S.C. § 9607(a)(4)(A)-(D) (describing the remediation and cleanup costs for

26  which covered persons may be held liable). CERCLA further provides that a person who has

27

28

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

incurred cleanup costs may seek contribution from any other covered person.  42 U.S.C. § 9613(f)(1).

The section giving rise to arranger liability provides, in relevant part, that liability shall be imposed on "any person who by contract, agreement or otherwise arranged for disposal . . . of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances . . .".  42 U.S.C. § 9607(a)(3).  Arranger liability ensures that owners of hazardous substances may not free themselves from liability by selling or otherwise transferring a hazardous substance to another party for the purpose of disposal.  Burlington N., 556 U.S. at 608 ("[Arranger] liability would attach . . . if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance.").  Courts have agreed that determining whether a transaction gives rise to arranger liability is a fact-intensive inquiry.  See Cal. Dep't of Toxic Substances v. Alco Pac., Inc., 508 F.3d 930, 938 (9th Cir. 2007); Team Enterprises, LLC v. W. Inv. Real Estate Trust, 647 F.3d 901, 907 (9th Cir. 2011) (arranger liability is a fact-intensive inquiry); Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc., 1:11-CV-84 CEJ, 2013 WL 4875071, at *7 (E.D. Mo. Sept. 11, 2013) ("[W]hether an entity is an arranger requires a fact-intensive inquiry that looks beyond the parties' characterization of the transaction as a 'disposal' or a 'sale' and seeks to discern whether the arrangement was one Congress intended to fall within the scope of CERCLA's strict-liability provisions.").

The Supreme Court recognized that "CERCLA does not specifically define what it means to 'arrang[e] for' disposal of a hazardous substance."  Burlington N., 556 U.S. at 610.  Giving the phrase its "ordinary meaning," the Court explained that "the word 'arrange' implies action directed to a specific purpose."  Id. (citing Merriam-Webster's Collegiate Dictionary 64 (10th ed. 1993)).  Consequently, "an entity may qualify as an arranger . . . when it takes intentional steps to dispose of a hazardous substance."  Id.  The Court reasoned:

[w]hile it is true that in some instances an entity's knowledge that its product will be . . . discarded may provide evidence of the entity's intent to dispose of its hazardous

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

wastes, knowledge alone is insufficient to prove that an entity "planned for" the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product.

Id.

In Team Enterprises, 647 F.3d at 909, a manufacturer of a dry cleaning machine used to recycle PCE was deemed not to be liable as an arranger under CERCLA. The Ninth Circuit held that in order to satisfy the intent requirement and hold a company liable as an arranger under CERCLA, a plaintiff must prove that the company selling a product "uses and/or generates a hazardous substance as part of its operation" *and* entered into the relevant transaction with the "*specific purpose* of disposing of a hazardous substance." Id. (emphasis added). The Plaintiff's argument that the defendant's instruction manual directed users to pour wastewater into a pail was held to be "insufficient to establish control because instruction manuals are akin to *recommendations*, and therefore, do not control the actions of the purchaser. Id. at 910 (emphasis added).

### c. Good Faith Settlement

Courts within the Ninth Circuit have borrowed from the California Code of Civil Procedure § 877.6 when analyzing whether a settlement has been reached in good faith and, in turn, whether a contribution bar should attach for federal causes of actions. See e.g., Federal Savings & Loan, Ins. Co. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990); see also KB Gardena Bdlg., LLC v. Whittaker Corp., 2012 WL 273888, at *2 (C.D. Cal. Jan. 30, 2012). Cal. Civ. P. § 877.6 permits a court to approve a settlement if it determines that the settlement was made in good faith. Tyco Thermal Controls LLC v. Redwood Indus., 2010 WL 3211926 (N.D. Cal. Aug. 12, 2010). "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. P. § 877.6(c). "[A] tort defendant who has entered into a good faith settlement within the meaning of section 877.6, subdivision (c) is absolved of any further liability .

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    . . . including claims seeking total equitable immunity." <u>Far W. Fin. Corp. v. D & S Co.</u>, 46 Cal. 3d

2    796, 817 (Cal. 1988).  Subdivision (c) applies only if the court finds that "the amount of the

3    settlement is within the reasonable range of the settling tortfeasor's proportional share of

4    comparative liability for the plaintiff's injuries." <u>L.C. Rudd & Son v. Superior Court</u>, 52 Cal. App.

5    4th 742, 747 (Cal. Ct. App. 1st Dist. 1997) (internal citation omitted).  Should any party challenge

6    a settlement, the burden is on that party to show that the settlement was not made in good faith.

7    <u>Fisher v. Superior Ct.</u>, 103 Cal. App. 3d 434, 447-49 (1980).

8         "Under federal law, particularly in CERCLA cases such as this, district courts have

9    approved settlements and entered bar orders." <u>AmeriPride Services Inc. v. Valley Indus.</u>, 2007 WL

10   1946635, at *2 (E.D. Cal. July 2, 2007), (citing <u>United States v. Western Processing Co., Inc.</u>, 756

11   F. Supp. 1424, 1432–33 (W.D. Wash. 1990)).  "Such an order is appropriate to facilitate

12   settlement, particularly in a CERCLA case."  <u>Id.</u>, (citing <u>Foamseal, Inc. v. Dow Chemical</u>, 991 F.

13   Supp. 883, 886 (E.D. Mich. 1998)).  "Within the Ninth Circuit, a court's authority to review and

14   approve settlements and to enter bar orders has been expressly recognized."  <u>Id.</u>, (citing <u>Franklin v.</u>

15   <u>Kaypro Corp.</u>, 884 F.2d 1222 (9th Cir. 1989) (approving settlement of claims and entering bar

16   orders in the context of federal securities laws));  <u>see also</u> <u>Federal Savings and Loan Ins. Corp. v.</u>

17   <u>Butler</u>, 904 F.2d 505, 511 (9th Cir. 1990).

18        The Court unequivocally has the authority to review settlements and enter bar orders that

19   discharge all federal and state law claims of contribution by non-settling defendants.  <u>See</u>

20   <u>AmeriPride Services Inc.</u>,  2007 WL 1946635, at *3; <u>see</u>, <u>e.g.</u>, <u>Federal Savings and Loan Ins. Corp</u>

21   <u>v. Butler</u>, 904 F.2d 505, 511 (9th Cir. 1990)

22             **d.  Nuisance**

23        California defines a "nuisance" as "[a]nything which is injurious to health, . . . or is

24   indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere

25   with the comfortable enjoyment of life or property."  Cal. Civ. Code § 3479.  Chemical

26   contamination of the soil that affects, or threatens to affect, water quality constitutes a nuisance.

27   <u>Selma Pressure Treating Co. v. Osmose Wood Preserving Co. of Am., Inc.</u>, 221 Cal. App. 3d 1601,

28

7

1619 (1990), (overruled on other grounds by Johnson v. Am. Standard, Inc., 43 Cal. 4th 56, 74 (2008)).  A person may be held liable under nuisance law if he "creat[es] or assist[s] to create and maintain the nuisance."  Id., (quoting Hardin v. Sin Claire, 115 Cal. 460, 462 (1896)).

The California Court of Appeals in City of Modesto Redevelopment Agency v. Superior Court, 119 Cal. App. 4th 28, 40-41 (2004), held "[t]hose who create or assist in creating a system that causes hazardous wastes to be disposed of improperly, or who instruct users to dispose of wastes improperly, can be liable under the law of nuisance."  However, contrast City of Modesto with the Ninth Circuit's decision in Team Enterprises, 647 F.3d 901 at 912, where the court held that "[m]ere but-for-causation . . . does not give rise to nuisance liability."  The Ninth Circuit concluded that "affirmative acts or instructions" are necessary to support "a finding that [defendant] assisted in creating a nuisance.  Id.  Also important in Team Enterprises was the Court's conclusion that the machine, which the Court finds very similar to the Ajax in this case, was not designed to route wastewater from the dry cleaning machine to the sewer, but was instead designed to filter and recycle used PCE.  Id.

III.    **Discussion**

a.  **Good Faith Settlement**

Multimatic Parties moves the Court for a determination that the proposed settlement between Settling Parties was made in good faith and for a bar on contribution claims, indemnity, and other claims related to this action.  The only party opposing the motion is ALMI.  ALMI devotes three pages of its opposition brief to discussing whether federal or state law applies to settlements when the case is venued in federal court.  Third Party Def Opp'n. to MDGFS at 2, Docket Item No. 195.  After concluding that there "does not appear to be a significant distinction" between how federal courts and state courts determine a good faith settlement, ALMI advises the Court to examine the proposed settlement between Settling Parties under controlling California Authority and to deny the motion.  Id. at 4.

ALMI objects to the proposed settlement agreement on a number of grounds.  First, ALMI argues the settlement is not in good faith because it is "patently and grossly unfair and

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

inequitable." Id. at 4.  According to ALMI, the proposed settlement of $450,000 along with the bar for contribution and indemnity claims, is not "in the ballpark" in an equitable sense and is "grossly disproportionate" to Multimatic Parties' reasonable estimate of exposure to the Plaintiffs. Id. at 6.  Should the Plaintiffs' claims against Multimatic Parties be dismissed and a complete site bar be ordered by the Court, ALMI argues that the remaining solvent defendants could be required to pay an amount over $6 million dollars.  Id. at 5.  Since Multimatic is the manufacturer of the allegedly defective machine at the Property, ALMI argues that the $450,000 settlement agreement only amounts to 6% of the alleged damages and leaves a grossly inequitable amount of liability to the non-settling defendants.  Id.  Finally, ALMI argues that Multimatic Parties have failed to show with specific evidence the reasonableness of the settlement under the Tech-Bilt factors and that the Court should deny the motion because the bar being sought by Multimatic Parties is "far too broad." Id. at 2,6.  The Court is not persuaded by these arguments.

As discussed above, the Court has the authority to approve the settlement and enter a Bar Order.  This authority also applies to settlement of state claims in a federal action.  See, e.g., Patterson Envtl. Response Trust v. Autocare 2000, Inc., 2002 U.S. Dist. LEXIS 28323, at *16 (E.D. Cal. June 28, 2002); Federal Savings and Loan Ins. Corp v. Butler, 904 F.2d 505, 511 (9th Cir. 1990).  It is appropriate for the Court to look to both federal and state law with respect to the settlement because the present action includes federal claims under CERCLA and numerous state statutes and common law.  AmeriPride Servs. Inc., 2007 WL 1946635, at *2.

CERCLA does not specifically address how settlements in private party cost recovery actions should be apportioned or assessed for equity, nor has the Ninth Circuit issued a decision directly addressing the issue.  42 U.S.C. §9613(f)(1) (providing no explicit guidance on the method of apportioning liability between private potentially responsible parties); Tyco Thermal Controls LLC v. Redwood Indus., 2010 WL 3211926 (N.D. Cal. Aug. 12, 2010); Adobe Lumber v. Hellman, 2009 WL 256553, at *3 (E.D. Cal. February 3, 2009) ("In the twenty-eight years that CERCLA has been [sic] existence, the Ninth Circuit has never addressed the question of the proper credit method for settlements between private PRPs under CERCLA."), but c.f. In re

9

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  <u>Exxon Valdez</u>, 229 F.3d 790, 796 (9th Cir. 2000) (asserting in the context of a non-CERCLA case

2  that "[t]he proportionate share approach is the law in the Ninth Circuit.").  However, the

3  legislative history of CERCLA imposes on the judiciary an obligation to apportion responsibility

4  fairly and equitably.  <u>United States v. Western Processing Co.</u>, 756 F. Supp. 1424, 1432 (W.D.

5  Wash. 1990).

6          In reviewing settlements, federal courts have closely examined the impact of the settlement

7  on the non-settling defendants, and to avoid unfair prejudice to non-settling defendants under a

8  contribution bar, in many cases, have applied the Uniform Comparative Fault Act ("UCFA").

9  <u>See</u>, <u>e.g.</u>, <u>Western</u>, 756 F. Supp. at 1432 ("Contribution and allocation is specifically what this

10  third-party action is about, and the Court is free to apply the UCFA provisions."); <u>New York v.</u>

11  <u>Solvent Chem. Co.</u>, 984 F. Supp. 160, 165-66, 168 (W.D. N.Y. 1997) ("The majority of courts

12  undertaking to allocate liability under this section have applied section 6 of the UCFA.");

13  <u>Comerica Bank-Detroit v. Allen Indus., Inc.</u>, 769 F. Supp. 1408, 1414 (E.D. Mich. 1991).  District

14  judges in the Ninth Circuit often use the proportionate share principles of the UCFA for

15  settlements between private parties.  <u>Adobe Lumber</u>, 2009 WL 256553, at *3, citing <u>Ameripride</u>

16  <u>Serv.</u>, 2007 WL 1946635, at *4; <u>Patterson</u>, 2002 U.S. Dist. LEXIS 28323, at *15 ("Most courts

17  have adopted the Uniform Comparative Fault Act in evaluating the effect of settlement upon

18  nonsettlors because its principles are most consistent with Congress's intent in enacting

19  CERCLA."); <u>West County Landfill, Inc. v. Raychem Int'l Corp.</u>, 1997 U.S. Dist. LEXIS 1791, at

20  *3 (N.D. Cal. Feb. 14, 1997); <u>Acme Fill Corp. v. Althin CD Med., Inc.</u>, 1995 WL 822663, at *1

21  (N.D. Cal. Nov. 8, 1995); <u>United States v. W. Processing Co.</u>, 756 F. Supp. 1424, 1432 (W.D.

22  Wash. 1990).  The UCFA "provides that the liability of non-settlers is reduced by the

23  proportionate share of fault attributed to the settling parties."

24          Accordingly, the Court finds the determination of good faith of the settlement between

25  Settling Parties is governed under federal common law and the proportionate share principles of

26  the UCFA applies for both the federal and state law claims.  <u>See</u> Uniform Comparative Fault Act

27  § 6; <u>Am. Cyanamid Co. v. Capuano</u>, 381 F.3d 6, 20 (1st Cir. 2004).  Pursuant to Section 6 of the

28

10

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

1  UCFA, the settling Plaintiffs' recovery, if any, on their asserted and assertable claims against the

2  non-settling parties shall be reduced by the amount of the settling Defendants' equitable and

3  proportionate shares of liability, as will be determined later by the Court in the allocation of

4  recoverable costs and damages incurred by Plaintiffs.  UCFA § 6.  The UCFA's proportionate

5  credit rule provides for equitable apportionment of responsibility, eliminates the need for a good

6  faith hearing; and prevents culpable settlors from escaping liability (whereas under a pro tanto

7  rule, a settlor who paid more than his fair share would reduce the liability of nonsettlors, a result

8  which discourages settlement).  Patterson, 2002 U.S. Dist. LEXIS 28323, at *16-17.

9           A hearing is not required because nonsettling parties were afforded an opportunity to

10  respond to the request for good faith determination.  See Cal. Civ. Proc. §877.6(a)(2).  A

11  determination by the Court that the settlement was made in good faith bars other joint tortfeasors

12  from any further claims against the settling tortfeasor for contribution.  See Cal. Civ. Proc.

13  §877.6(c).  Relevant factors in determining the good faith nature of this settlement include whether

14  the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional

15  share of comparative liability for the plaintiff's injuries, a recognition that a settlor should pay less

16  in settlement than he would if he were found liable after a trial, and evidence of collusion or fraud.

17  See Tech-Bilt, Inc. v. Woodward-Clyde & Associates, 38 Cal.3d 488, 499 (1985).  ALMI, in

18  opposing judicial approval of this settlement as not having been entered into in good faith, failed to

19  demonstrate "that the settlement is so far out of the ballpark in relation to these factors as to be

20  inconsistent with the equitable objectives of the statute."  Id. at 499-500.

21           Here, the Settling Parties have made the required showing that the settlement is

22  procedurally and substantively fair.  The settlement was the result of extensive, arms-length

23  negotiations that took place with involvement of a neutral mediator.  MDGFS at 1, Dkt. No. 192.

24  The Settling Parties have demonstrated that the decision to settle was motivated by their shared

25  desires of avoiding significant costs required to further litigate this case and the uncertainties of

26  litigation.  The settlement was also motivated by Multimatic Parties' desire for finality with respect

27  to its involvement in litigation related to the soil and groundwater contamination at or around the

28

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Property.  We disagree with ALMI's contention that the settlement only amounts to 6% of the alleged damages and leaves a "grossly inequitable amount of liability to the non-settling defendants."  Third Party Def Opp'n. to MDGFS at 2.  Discovery responses assert approximately $5.7 million as being attributable to remediation and clean-up costs, not $7 million that ALMI uses to calculate the 3% figure.  See Declaration of Robert Berg, Ex. 4, Docket Item No. 196.  The remainder of approximately $1.2 million is attributed to legal and consultant costs and fees.  Since the Settling Parties agreed as part of their settlement to bear their own costs and fees, it is inappropriate to calculate any proportion of liability using the larger $7 million figure.  The Court analyzes whether the settlement amount is within the "reasonable range" by looking at the proportional share of comparative liability of Multimatic Parties, not the *total* liability outstanding.  At the time the settlement was signed, there were five potential parties for whom liability could attach. Multimatic Reply Br. at 6, Docket Item No. 197.  But even assuming for the sake of argument, all liability for the future clean-up costs were apportioned to Multimatic, this settlement would still represent 8% of those costs.  District courts have approved settlements as being in good faith for payment of 3% of an alleged tortfeasor's potential liability.  See, e.g., Chevron Envtl. Mgmt. Co. v. BKK Corp., 2013 WL 5587363, at *3 (E.D. Cal. Oct. 10, 2013) (holding the settlement represents less than 3% of total clean-up costs and is within the ballpark of defendant's alleged proportionate liability).  Since this settlement exceeds that percentage, the court finds that it is not "grossly inequitable" and hereby approves it as a reasonable, fair, and good faith settlement under federal common law and the proportionate share principles of the UCFA.

The Court also recognizes the strong federal interest in promoting settlement of complex CERCLA actions.  To help advance early and complete settlements of private cost recovery actions, courts have used their authority to approve settlements in combination with their ability to impose broad contribution bars to allow settling defendants to free themselves from current and future-related litigation.  It is consistent with federal courts to order dismissal and bar of cross-claims against settling parties in order to facilitate settlement in environmental cleanup cases.  American Cyanamid Co. v. King Industries, Inc., 814 F. Supp. 215, 219 (D.R.I. 1993);

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Barton Solvents, Inc. v. Southwest Petro-Chem, Inc., 834 F. Supp. 342, 345 (D. Kan. 1993); U.S. v. SCA Services of Indiana, Inc., 827 F. Supp. 526, 531 (N.D. Ind. 1993); Comerica Bank-Detroit v. Allen Industries, Inc., 769 F. Supp. 1408, 1414-1416 (E.D. Mich. 1991); City & Cnty. of Denver v. Adolph Coors Co., 829 F. Supp. 340, 344 (D. Colo. 1993).  Pursuant to UCFA Section 6 and California Code of Civil Procedure § 877.6, any and all claims against Multimatic Parties, arising out of the matters addressed in this action or addressed in the Settlement Agreement, regardless of when asserted or by whom, are barred.  Such claims are barred regardless of whether they are brought pursuant to CERCLA 42 U.S.C. § 9601, et seq., or pursuant to common law or other federal or state laws.  The parties to the Settlement Agreement are to bear their own costs, expenses and attorneys' fees with respect to the filing of the motion and any appeal thereof.  The Court shall retain continuing jurisdiction over the Settlement Agreement between the Settling Parties so as to enforce the obligations of the parties.  The Settlement Agreement between Settling Parties shall be binding on all parties to this litigation, including any nonsettlors, and shall be binding with respect to all matters relating to the hazardous waste and contamination at the site, 1350 Freedom Blvd, Watsonville California.  Except as otherwise specified in the Settlement Agreement among the parties, all pending claims of the settling Plaintiffs against Multimatic Parties, and any claims against third party defendants or cross-claims against nonsettling defendants, shall be dismissed, with prejudice, pursuant to the terms of the Settlement Agreement.

### b. CERCLA

With respect to its First and Second causes of action, Third-Party Plaintiff asserts ALMI is liable as an arranger for the disposal of hazardous waste.  She seeks 100% contribution from ALMI pursuant to Section 113(f)(1) for her incurred response costs and future costs related to the release and threatened release of hazardous substances at the Property.  She also requests "past, present, and future necessary costs of responses including without limitation, investigation and remediation expenses, attorney fees, oversight costs and interest pursuant to Section 107(a).  Finally, she moves the Court for a declaratory judgment pursuant to Section 113(g) in order to "recover her response

United States District Court
For the Northern District of California

1    costs or damages incurred as a result of hazardous substances at or around the [P]roperty."  TAC ¶

2    83, Dkt. No. 141.

3          To plead a prima facie contribution case against ALMI, Third-Party Plaintiff must prove

4    that ALMI "is within one of four classes of persons subject to CERCLA's liability provisions."

5    Team Enterprises, LLC v. W. Inv. Real Estate Trust, 721 F. Supp. 2d 898, 904 (E.D. Cal. 2010)

6    aff'd, 446 F. App'x 23 (9th Cir. 2011).  Although Section 9607 creates the right of contribution, the

7    "machinery" of Section 9613 "governs and regulates such actions, providing the details and

8    explicit recognition that were missing" from Section 9607.  Pinal Creek Group v. Newmont Mining

9    Corp., 118 F.3d 1298, 1302 (9th Cir. 1997), cert. denied, 524 U.S. 937 (1998).  As such, ALMI

10   argues that if an entity is not a covered person under Section 9607, that entity is not subject

11   to Section 9613 contribution liability because Section 9607 creates the Section 9613 contribution

12   right.  Team Enterprises, LLC v. W. Inv. Real Estate Trust, 721 F. Supp. 2d at 904.  The Court

13   agrees.

14         Third-Party Plaintiff argues that ALMI is in one of the four classes of persons subject to

15   CERCLA liability because ALMI is liable as an arranger under 42 U.S.C. § 9607(a)(3).  Section

16   9607(a)(3) identifies the following as "covered persons" subject to CERCLA contribution claims:

17          (3) any person who by contract, agreement, or otherwise arranged for disposal or

18          treatment, or arranged with a transporter for transport for disposal or treatment, of

19          hazardous substances owned or possessed by such person, by any other party or entity, at

20          any facility . . . owned or operated by another party or entity and containing such hazardous

21          substances.

22          42 U.S.C. § 9607(a)(3).

23   Section 9613(f)(1) authorizes contribution claims:

24          Any person may seek contribution from any other person who is liable or potentially liable

25          under section 9607(a) of this title, during or following any civil action under section 9606

26          of this title or under section 9607(a) of this title. Such claims shall be brought in accordance

27          with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal

28

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

1    law. In resolving contribution claims, the court may allocate response costs among liable

2    parties using such equitable factors as the court determines are appropriate.

3    42 U.S.C. § 9613(f)(1).

4        Whether § 9607(a)(3) liability attaches is fact intensive and case specific.  Burlington

5    N., 556 U.S. at 610.  That being said, liability may not extend beyond the limits of the statute itself.

6    The Court recognizes that a classic case applying the useful product doctrine to avoid liability

7    usually involves a defendant selling products that qualify as hazardous substances, such as

8    pesticides or batteries.  See, e.g.,  Burlington N., 556 U.S. at 602 (sale of pesticides); Catellus Dev.

9    Corp. v. United States, 34 F.3d 748 (9th Cir. 1994) (sale of spent batteries).

10        In this case, Third-Party Plaintiff does not argue the Ajax itself is a hazardous substance.

11   Instead, she contends that ALMI's directive in the Ajax manual that the machine is to be connected

12   so that "the water flow outlet [be connected] to a waste water drain or trough" establishes a triable

13   issue regarding ALMI's intent to dispose of a hazardous substance.  Pl.'s Resp. at 17, Dkt. No. 214.

14   Nevertheless, the presumption underlying the doctrine - that people sell useful products for

15   legitimate business purposes, not for the purpose of disposing of waste - is applicable to this case.

16   Third-Party Plaintiff cites a Ninth Circuit decision holding that in order for CERCLA liability to

17   attach, the equipment company must have intended for its sale of equipment to result in the

18   disposal of PCE.  Team Enterprises, 647 F.3d at 909.  However in Team Enterprises, the Ninth

19   Circuit held that the plaintiff presented no evidence indicating that the manufacturer designed the

20   Rescue 800 for the alleged "purpose of being a waste disposal machine."  Id.  The Ninth Circuit

21   refused to attach liability to the manufacturer since the design of the machine only indicated that

22   the manufacturer was at most "indifferent to the possibility" that plaintiff would pour PCE down

23   the drain.  Id.  (That the equipment instructed users to place contaminated wastewater in a pail was

24   not enough to hold Team liable as an arranger under CERCLA).  The Ninth Circuit went on to hold

25   that the purpose of the Rescue 800 was to "recover and to recycle usable PCE that would otherwise

26   be discarded."  Id.

27

28

15

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

The Ninth Circuit also held in <u>Hinds Investment LLP v. Albert Angioli</u>, 654 F. 3d 854 (9th Cir. 2011), that a defendant cannot have liability unless the plaintiff proves that the defendant had a "measure of control over the waste at the time of its disposal and was otherwise actively involved in the waste disposal process."  The Ninth Circuit in both the <u>Team Enterprises</u> and <u>Hinds</u> decisions required knowledge and active conduct with respect to the disposal of PCE on behalf of the manufacturer in order to extend arranger liability under CERCLA.  The instruction manuals themselves were insufficient to establish the necessary control over the hazardous waste because, as noted already, "manuals are akin to recommendations and, therefore, do not control the actions of the purchaser."  <u>Team Enterprises</u>, 647 F.3d at 910.  Finally, this Court found in <u>KFD Enterprises, Inc. v. City of Eureka</u>, 2012 WL 6554097, at *1 (N.D. Cal. December 14, 2012), that the plaintiff was required to show that when the defendant sold the dry cleaning equipment in question, defendant's "probable purpose for entering into such a transaction [was] to dispose of hazardous waste."

To distinguish the present case from both <u>Team Enterprises</u> and <u>Hinds</u>, Third-Party Plaintiff argues that ALMI instructed users of the Ajax to place contaminated wastewater directly into the drain without alternative.  Pl.'s Resp. at 17-20, Dkt. No. 214 ("The manual gave specific instructions as it required the Ajax to be hooked up to a sewer outlet and even provided specific piping materials to be utilized when doing the plumbing.").[1]  According to Third-Party Plaintiff, she did not have control over or come into direct contact with the wastewater between the time the machine generated the waste and the time waste was disposed of.  Therefore, she argues ALMI accepted, arranged for, and carried out the ultimate disposal of the waste generated by its machine.  <u>Id.</u> at 18.  Third-Party Plaintiff also argues that the failure to warn together with ALMI's directions requiring that the machine be attached to a sewer outlet for disposing of waste demonstrates ALMI's conduct surpasses mere knowledge.  Pl's Resp. at 19.

---

[1] Third-Party Plaintiff misstates the language of the Ajax model.  The actual language used in the instruction manual directs the user to "connect the water overflow outlet to a <u>suitable waste water drain</u> or <u>trough</u>." Declaration of Jan A. Greben, Ex. D, Docket No. 214  (emphasis added).

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

1    ALMI counters that Third-Party Plaintiff has adduced no material evidence proving active

2    conduct, knowledge, or intent on the part of ALMI and therefore is entitled to summary judgment

3    on the CERCLA causes of action.  See Defendant's Motion for Summary Judgment ("Def. MSJ")

4    at 8, Docket Item No. 202.  The "intentional conduct" defense prevents a seller of a useful product

5    from being subject to arranger liability even where the product is a hazardous substance that may in

6    the future require disposal.  Team Enterprises, 647 F. 3d at 908.  To satisfy the intent requirement,

7    the Ninth Circuit expressly stated that the plaintiff must prove the manufacturer entered into the

8    relevant transaction with "the specific purpose of disposing of a hazardous substance."  Id. at 910.

9    ALMI argues that the Ninth Circuit's decision in Team Enterprises unambiguously holds that a

10   manufacturer of a dry cleaning equipment machine cannot be held liable as an arranger unless it is

11   proven that the manufacturer intended the product to be used as a waste disposal machine.  Id. at

12   911 (plaintiff presented "no evidence indicating that Street designed the [Puritan] Rescue 800 for

13   the alleged purpose of being a waste disposal machine.").  The Court agrees.  Like in Team

14   Enterprises, the dry cleaning machines in the present case used PCE as part of the cleaning process.

15   Similar to the Rescue 800 used in Team Enterprises, the Ajax was designed and manufactured to

16   filter and recycle the PCE-laden wastewater for reuse.  Exhibit D, PR0023, Docket Item No 214

17   (describing the Ajax and listing the lower discharge chamber as being used during the "recycling

18   process when stripping the accumulated 'perc' from the bed"); see also Exhibit D, PR0023

19   ("During recycling . . .").

20        Third-Party Plaintiff argues the present case is distinguishable from Team Enterprises

21   because the ALMI instruction manual for the Ajax required hooking it up to a sewer outlet,

22   whereas the Rescue 800 manual instructed wastewater to be placed in a pail.  Actual control over

23   the disposal of hazardous materials is necessary to impose arranger liability under CERCLA.

24   United States v. Shell Oil Company, 294 F.3d 1045, 1054-1055 (9th Cir. 2002) (holding that "the

25   United States neither exercised actual control, nor had the direct ability to control [the waste]").

26   Third-Party Plaintiff argues that, "[u]nlike other manufacturers who argue they left waste in the

27   operator's hands, ALMI required the wastewater outlet pipe be plumbed to the sewer drain during

28

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    its installation without an alternative."  Pl's Resp. at 20.  But in her attempt to establish ALMI's

2    actual control over the hazardous waste from the Ajax, and consequently her own lack of control,

3    Third-Party Plaintiff misstates the actual language of the Ajax manual.  The Ajax manual does not

4    instruct the user to connect the unit to a "sewer," but instead instructs the user to "connect the

5    water overflow outlet to a *suitable* waste water drain *or trough*."  Declaration of Jan A. Greben,

6    Ex. D, Docket Item No. 214 (emphasis added).  The Ajax manual therefore provides alternative

7    disposal methods and leaves the operator of the machine with a comparable level of control over

8    the hazardous substance as the operator in Team Enterprises.  The PCE laden wastewater from the

9    Ajax could either be disposed of in a suitable drain or captured in a trough, just as the PCE laden

10   wastewater in the Team Enterprises case could be disposed of in a pail or other suitable container.

11   Id. at 910 ("[T]he manual directed Team to attach a pipe from waste water leg of water separator

12   downward . . . so [it] may be caught in a pail or other suitable container").  The Court also finds

13   Third-Party Plaintiff's reliance on ALMI's manual cuts against her argument that ALMI

14   contemplated and instructed that the wastewater outlet be sent to an "open drain," for the manual

15   also mandates statutory compliance with "all local and state regulations concerning waste disposal

16   to streams, municipal treatment plants or into the ground."  Exhibit D, PR0010, Docket Item No

17   214.  The Court finds ALMI's design and instruction manual for the Ajax leaves ALMI, at most,

18   indifferent to the possibility that Third-Party Plaintiff would pour the wastewater directly into the

19   sewer.  Absent a showing that ALMI intended for its sale of the Ajax to be a waste disposal

20   machine, the Court must, and herein does, follow the Ninth Circuit precedent and concludes ALMI

21   lacked the requisite intent for arranger liability.  The deficiency of evidence indicating that ALMI

22   exercised actual control over Third-Party Plaintiff's disposal leaves no genuine dispute as to any

23   material fact with respect to her CERCLA claim.

24         Accordingly, ALMI is entitled to is entitled to summary judgment on the First and Second

25   causes of action.

26

27

28

18

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

### c. Nuisance

California defines a "nuisance" as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property."  Cal. Civ. Code § 3479; Team Enterprises, 647 F.3d at 911.  Chemical contamination of soil affecting or threating to affect water quality constitutes a nuisance.  Selma Pressure Treating Co. v. Osmose Wood Preserving Co., 221 Cal. App. 3d 1601, 1619 (Ct. App. 1990), (overruled on other grounds by Johnson v. Am. Standard, Inc., 43 Cal. 4th 56, 74 (2008) (The court held it is not "improper to characterize a nuisance as consisting of chemical products in the soil which were affecting, and threatened to affect to a much greater degree, the quality of water . . .")).  As the court made expressly clear in City of Modesto, 119 Cal. App. 4th at 41, it is not necessary for the defendant to be "physically engaged in a discharge or have the ability to control waste disposal activities" to be held liable under a nuisance claim.  Nuisance liability can attach where a manufacturer designed equipment to discharge waste in a manner that will create a nuisance, or where the manufacturer took affirmative steps directed toward the improper discharge of solvent wastes.  See City of Modesto, 119 Cal. App. 4th at 41-43; see also Team Enterprises, 647 F.3d at 911.  But a manufacturer who only places the solvents into " the stream of commerce" is not liable under the tort of nuisance.  Id. at 43.

In the present case, it is undisputed that chemical contamination of the soil occurred at and around the Property.  There is also no dispute that PCE is injurious to human health.  Third-Party Plaintiff's nuisance claims therefore depends on whether ALMI "creat[ed] or assist[ed] to create and maintain the nuisance."  See Team Enterprises, 647 F.3d at 912; see also City of Modesto, 119 Cal. App. 4th at 38 ("[L]iability for nuisance does not hinge on whether the defendant owns, possesses or controls the property, nor on whether he is in a position to abate the nuisance; the critical question is whether the defendant created or assisted in the creation of the nuisance.").  ALMI may be liable for assisting in the creation of a nuisance if it either affirmatively instructed the polluting entity to dispose of hazardous substances in an improper or unlawful manner, see City of Modesto, 119 Cal. App. 4th at 40-41, or ALMI installed and provided technical advice about the

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

disposal system.  See Selma Pressure Treating, 271 Cal. Rptr. at 1619 (holding that Defendant created or assisted in the creation of a public nuisance because it "installed equipment and provided technical advice . . . concerning the disposal of chemical waste products of its process.").

Third-Party Plaintiff presented evidence that ALMI's manual instructed the user to connect the water overflow outlet of the Ajax to a "suitable waste water drain or trough."  But no evidence in the record supports a finding that ALMI instructed Third-Party Plaintiff to set up the Ajax to discharge solvent-containing wastewater directly into the sewer or that ALMI affirmatively instructed her to dispose of spilled PCE on or in the ground.  Although Third-Party Plaintiff attempts to liken this case to KFD, the Court finds the facts in the present case significantly distinguishable.  In KFD, the court found the instruction manual's direction to users requiring wastewater to flow into an open drain was enough to support a finding that the manufacturer assisted in creating a nuisance.  KFD, 2012 WL 6554097, at *2 (Defendant not entitled to summary judgment on KFD's nuisance claims because instruction manual included the following direction to users: "waste water must flow into an open drain") (emphasis added).  The Ajax manual did not mandate disposal by a certain method, left the user with alternate methods of disposal, none of which expressly stated a sewer or open drain, and mandated statutory compliance with "all local and state regulations concerning waste disposal to streams, municipal treatment plants or into the ground."  Exh. D, PR0010.  The Court finds the Ajax manual does not indicate ALMI engaged in the "kinds of affirmative acts or instructions" that would "support a finding that [ALMI] assisted in creating a nuisance."  City of Modesto, 119 Cal. App. 4th at 41.

The Court also agrees with ALMI that the Ajax was not sold to be a waste disposal system. Like the Rescue 800 in Team Enterprises, the Ajax was not designed to route wastewater from the dry cleaning machines to the sewer.  Team Enterprises, 647 F.3d at 912.  As discussed already, it was designed to filter and to recycle used PCE that otherwise would have been lost. See Exhibit D, PR0023.  Therefore, the Court follows the precedent set by the Ninth Circuit and holds that Third-Party Plaintiff failed to present sufficient evidence giving rise to a genuine dispute as to any material fact with respect to her nuisance claims.

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1     Accordingly, ALMI is entitled to is entitled to summary judgment on the Ninth and Tenth

2     causes of action.

3          **d.  HSAA Claims**

4          Third-Party Plaintiff's third cause of action seeks indemnity and contribution for removal

5     and remedial costs under California Health & Safety Code § 25300 et. seq.  TAC ¶ 87, Dkt. No.

6     141.  The Ninth Circuit expressly held that because this California statute parallels the federal

7     CERCLA statute, a defendant is not subject to HSAA liability in the absence of derivative

8     CERCLA liability.  <u>Team Enterprises, LLC v. W. Inv. Real Estate Trust</u>, 721 F. Supp. 2d at 904

9     ("Multimatic is not subject to HSAA liability in the absence of derivative CERCLA liability in that

10    a '[r]esponsible party' or 'liable person' for HSAA purposes means 'those persons described' in

11    CERCLA section 9607(a)").  As discussed extensively above, ALMI is entitled to summary

12    judgment on causes of action One and Two because the Court did not find Arranger liability as

13    defined under CERCLA.  Third-Party Plaintiff's HSAA claims disappear along with the CERCLA

14    claims.

15         Accordingly, the Court finds ALMI is entitled to summary judgment on the Third cause of

16    action.

17         **e.  Twelfth Claim ("Declaratory Relief")**

18         ALMI argues that the declaratory relief claim fails also in the absence of an actual

19    controversy given that the remedy is predicated on other causes of action in the present case.

20    The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

21         In a case of actual controversy within its jurisdiction . . . any court of the United States,

22         upon the filing of an appropriate pleading, may declare the rights and other legal relations

23         of any interested party seeking such declaration, whether or not further relief is or could be

24         sought. Any such declaration shall have the force and effect of a final judgment or decree

25         and shall be reviewable as such.

26         28 U.S.C. § 2201(a).

27

28

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

It is therefore well established that a declaratory judgment is not a theory of recovery. Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 775 (1st Cir. 1994). The Declaratory Judgment Act "merely offers an additional remedy to litigants." Nat'l Union Fire Ins. Co. v. Karp, 108 F.3d 17, 21 (2nd Cir.1997). A Declaratory Judgment Act action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." American States Ins. Co. v. Kearns, 15 F.3d 142, 143-144 (9th Cir. 1994). Third-Party Plaintiff rests the viability of her declaratory relief claim on that of her CERCLA and HSAA claims. Just as the Ninth Circuit held in Team Enterprises, LLC v. W. Inv. Real Estate Trust, 721 F. Supp. 2d at 911, the Court finds the declaratory relief claim falls with the demise of the CERCLA, HSAA and other claims in the present case because there is an absence of a cognizable justiciable controversy.

Accordingly, the Court finds ALMI is entitled to summary judgment on the Twelfth cause of action.

### f.   Equitable Indemnity, Common Law Contribution, and the Porter-Cologne

Third-Party Plaintiff also seeks equitable indemnity based on her strict product liability cause of action. TAC ¶ 115, Dkt. No. 141. "[A] right to indemnify exists only if the injured party has a legal cause of action against both the indemnitor and the indemnitee." Team Enterprises, LLC v. W. Inv. Real Estate Trust, 721 F. Supp. 2d at 910, (quoting General Motors Corp. v. Doupnik, 1 F.3d 862, 866 (9th Cir. 1993)). In the absence of Third-Party Plaintiff's cause of action based on strict product liability, there can be no right to equitable indemnity. Id. at 911 ("[I]n the absence of liability based on product liability, there can be no right to equitable indemnity"). Third-Party Plaintiff's voluntary dismissal of her Thirteenth cause of action alleging strict products liability removes any substantive claim for which the Court could consider granting equitable relief.

Third-Party Plaintiff's Sixth and Eight causes of action are for relief based on contribution. Her right to relief is predicated on the existence of any valid substantive cause of action for which ALMI could be held jointly liable to Third-Party Plaintiff. See Coca-Cola Bottling Co. v. Lucky

22

United States District Court
For the Northern District of California

Stores, Inc., 11 Cal. App. 4th 1372, 1378 (1992) ("A right of contribution can come into existence only after . . . a judgment declaring more than one defendant jointly liable to the plaintiff").  Since ALMI is entitled to summary judgment on all substantive claims presently before the Court, Third-Party Plaintiff has no underlying substantive claim against ALMI.

Accordingly, ALMI is also entitled to summary judgment on the contribution causes of action because they fail to survive independently.

**IV.     Conclusion**

For the foregoing reasons and for good cause shown, the Court hereby finds the Settlement Agreement between the Settling Parties was made in good faith, and all parties are barred from pursuing any claims or cross-claims against Multimatic Parties for any cause related to Heim parties' actions.  The Motion to Approve the Settlement is therefore GRANTED.  The Court shall retain continuing jurisdiction over the Settlement Agreement between the Settling Parties so as to enforce the obligations of the parties.

With respect to ALMI's Motion for Summary Judgment, the Court hereby GRANTS the motion in its entirety for the reasons discussed herein.

The court schedules this case for a Case Management Conference at **10:00 a.m. on April 25, 2014,** in order to determine what issues remain to be resolved and how the parties plan to proceed.  The parties shall file a Joint Case Management Statement on or before **April 18, 2014.**

**IT IS SO ORDERED**

Dated:  April 2, 2014

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:10-CV-03816-EJD
ORDER GRANTING MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT
AND BARRING OF CLAIMS; GRANTING MOTION FOR SUMMARY JUDGMENT